FIRST NATIONAL BANK OF WEST MINNEAPOLIS, Appellant, v. HARVEY, Respondent.

(137 N. W. 365.)

**1. Negotiable Instrument—Statement of Former Owner—Evidence.**

Where a note is obtained by fraud and is transferred to a participant in the fraud, the transfer itself being fraudulent and made for the purpose of cutting off maker's defense as against such fraud, the original payee is still deemed the owner, and statements made by him are competent and proper on question of fraudulent intent in the inception of the note.

**2. Negotiable Instrument—Hearsay Evidence—Statements by Former Owner.**

In an action on a note, statements of original payee, to show fraud in the inception and transfer of the notes are admissible where the evidence is sufficient to authorize a finding that the notes were obtained by fraud, that payee, notwithstanding the transfer, still had such interest therein as would render his statements admissible, that the procuring and the transfer to plaintiff was in bad faith.

3.  **Negotiable Instruments—Fraud—Fraud in Transfer—Sufficiency of Evidence.**

Evidence in an action on negotiable notes held sufficient to warrant a finding that plaintiff, a nominal transferee, knowingly participated in obtaining the note by fraud.

4.  **Corporation—Representation of By Officer or Manager.**

A corporation can act only by and through its officers and managers.

5.  **Corporation — Fraud — Agency, No Dual Capacity — Notice to Officer or Agent, Affecting Corporation—Pleading—Defense to Note.**

Where plaintiff corporation is the nominal payee of a note sued on as executed to it, but whose evidence is to effect that it purchased note from one who was plaintiff's officer and agent, held, that any knowledge possessed by such officer as to origin of the note must be imputed to plaintiff; that plaintiff stands in shoes of such officer, and whatever is good defense or proper evidence against the officer, were he plaintiff, stands also as against plaintiff.

6.  **Negotiable Instrument—Nominal Transferee—Burden of Proof —Bona Fide Purchaser.**

The burden of proof is on plaintiff corporation to show bona fides, for value, of an alleged transfer of a note to it from one from whom it seeks to prove it received it as indorsee, the note itself appearing to run to plaintiff direct, plaintiff not claiming ownership through a nominal assignment on its back.

7.  **Fraudulent Note—Position of Defendant—Proof of Fraud by Circumstances—Less Evidence Required.**

Where the maker defending an action on Notes, on ground of fraud in their inception and transfer, must rely on visible surrounding circumstances, the direct evidence of fraud is usually known only to participants therein, less evidence is required to establish fraud than where direct evidence is at hand.

8.  **Issue of Fraud—Latitude as to Evidence.**

On the issue of fraud, great latitude is permitted in adducing evidence. The whole transaction may be scrutinized. Statements and acts of the parties before and after the transaction ended are competent.

9.  **Fraud—Limitation of Discretion in Proof of.**

The limit of scope and latitude in proof of fraud depending on circumstantial evidence and statements of participants is within sound discretion of trial court, and becomes error only when there clearly has been abuse of such discretion.

**10. Evidence—Res Geste—Circumstances of Giving Note—Settlement Involving Note.**

Where notes in suit are defended on ground of fraud in their inception and transfer, the facts and circumstances of a real estate transaction between maker and original payee or nominal transferee, are material and part of res geste; and a statement concerning a settlement involving the note, made by one to whom the note was delivered and supposedly made, constituted a verbal act as part of the transaction.

**11. Evidence—Negotiable Instrument—Bringing Out Whole Transaction.**

In a suit on notes where plaintiff, the nominal payee but alleged transferee, called the maker as witness and interrogated her as to a land transaction in settlement of which the note was given, defendant was entitled to show the whole transaction, though part of it occurred after delivery of note.

**12. Evidence of Fraud—Negotiable Note—Proof of Similar Fraud.**

In a suit on notes defended on ground of fraud in their inception, and transfer by the alleged original payee to the corporation plaintiff of which such payee was an officer, evidence of a third party as to similar frauds in her transactions with such officer was admissible.

**13. Evidence—Harmless Error.**

Error in admission of secondary evidence whose admission was not prejudicial, because not in issue, is harmless.

**14. Instructions—Error Favorable to Complaining Party.**

Where instructions of the trial court were more favorable to complaining party than the evidence warranted, they are not prejudicial error.

Whiting, J., dissenting.

(Opinion filed, June 25, 1912.)

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by the First National Bank of West Minneapolis against Lizzie E. Harvey, on two promissory notes; one made nominally payable to order of plaintiff, but having on its back a formal assignment to plaintiff by one Lund; the other payable to the order of J. G. Lund and purporting to be endorsed by him to plaintiff. Judgment for defendant, and plaintiff appeals. Affirmed.

*Bruell & Morris* and *T. C. Clary,* for Appellant.

The signature of every drawer, acceptor and indorser on a negotiable instrument is presumed to have been made for a valu-

able consideration before the maturity of the instrument, and in the ordinary course of business. Civil Code, Sec. 2182; Stone v. Crow, 2 S. D. 530.

An indorsee in due course is one who in good faith in the ordinary course of business and for value, before its apparent maturity, or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer. Civil Code, Sec. 2199; Thompson v. Bank, 150 U. S. 231; McCormick v. Taylor, 5 N. D. 53; First National Bank v. Flath, 86 N. W. R. 868 (N. D.)

The plaintiff in order to aid in clearing up the errors made by the trial court in allowing certain cross-examination of the witness Dix in reference to the amount that a national bank can loan to one individual, etc. (See Abs. Fol. 539-541), requested the court to give to the jury instruction No. 26 requested by plaintiff, which is as follows: "You are further instructed that the purchase by the plaintiff of Exhibits "A" and "B", or either of them, was not in violation of the national banking laws governing national banks, prohibiting the loaning of moneys to one individual for a sum in excess of 10 per cent. of its capital stock and surplus." (Abs. Fol. 458).

The court, however, gave to the jury the following instruction, which was excepted to at the time by the plaintiff's counsel, and which was entitled Instruction No. 17, to-wit: "The United States law as to national banks provides the total liabilities of any asociation or any person or of any company, corporation or firm for money borrowed, including the liabilities of a company or firm, or the liabilities of the several members thereof, shall at no time exceed 1-10th of the amount of the capital stock of such association actually paid in and unimpaired and 1-10th of its unimpaired surplus funds, provided, however, that the total amount of such liabilities shall in no event exceed 30 per cent. of the capital stock of the association, but the discount of bills of exchange drawn in good faith against actual existing values, and the discount of commercial or business papers, actually owned by

the person negotiating the same, shall not be considered as money borrowed."

The court in giving this instruction to the jury upon this point did not correctly quote section 5200 of the Revised Statutes of the United States.

The United States Supreme Court in commenting upon this section says: "But if a greater sum is loaned than is allowed by the statute, the loan is not void, and that fact can be set up in defense to an action for the recovery of the money so loaned, or any part thereof." Union Gold Mining Company v. Rocky Mt. National Bank, 96 U. S.; Shoemaker v. Nat'l. Mechanic's Bank, 21 Fed. Case 12, 801, 640; Wyman v. Citizens' Nat'l. Bank, 29 Fed. 734; Mills County Bank v. Perry, 72 Ia. 15; Corcoran v. Batchelder, 147 Mass. 541; Allen v. Warren Nat'l. Bank, 127 Penn. St. 51. ,

While it is true that the jury is to be the judge of the credibility of the witnesses, and the evidence offered, yet, when positive and direct testimony is undisputed and uncontradicted and no improbability or inconsistency is apparent in it or disclosed by other facts or circumstances, and the witness is not impeached or discredited, such testimony must be believed, and a verdict contrary to it should be set aside. Boe v. Lynch, 49 Pac. 381 (Mont.)

Assignments 7, 8, 9, 10, 11, 12 and 13 may be reasonably considered together. They all relate to questions asked the defendant by her counsel. (Abs. Fols. 542-551), and they are incompetent and immaterial and did not refer to the issues involved in this case, but relate to transactions that the defendant had with J. G. Lund in reference to matters wholly without the issues here involved..

Assignments 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26 may be considered together. (Abstract folios 553 to 572). The admission of this testimony is most highly prejudicial to the plaintiff and relates to transactions not in issue in this case, and the trial court erred in allowing the defendant to testify to the conversation that took place between her and J. G. Lund at the time of the execution of Exhibits "2" and "2 1-2" and "AA".

These transactions were not involved in this case, and were foreign to its issues, but the admission of this testimony tended to show that there had been an attempt to alter a written instrument by some one without the consent of the defendant after she had signed the same, and that some trickery, deceit or fraud had been practiced upon her in connection with the change or alteration of these Exhibits "2" and "2 1-2", and hence J. G. Lund was a scoundrel, and any transaction with which he was connected was tainted, and the jury should be governed thereby. This is the natural conclusion to be drawn from the admission of this testimony, and there is no question in our minds but that the jury was inflamed and prejudiced against the plaintiff by reason of the testimony of the defendant as indicated by these assignments.

Assignments 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26 may be considered together. (Abstracts folios 553 to 572). The admission of this testimony is most highly prejudicial to the plaintiff, and relates to transactions not in issue in this case, and the trial court erred in allowing the defendant to testify as to the conversation that took place between her and J. G. Lund at the time of the execution of Exhibits "2" and "2 1-2" and "AA."

Assignments 32, 33, 34, 35, 36, 38 and 41 may be considered together and all refer to matters wholly without the issues of the case; that tend to muddle the minds of the jurors and to show parts of transactions between the defendant and J. G. Lund, and to throw some slur or stain upon the transactions and relations of Lund with this woman; all of which were highly prejudicial to the plaintiff.

Assignments 37, 39, 40, 54, 73, 74 and 83 all relate to the admission of exhibits, which exhibits were wholly without the issues of the case; incompetent, and immaterial, and were most prejudicial to the plaintiff. This court has within the past few years expressed itself and established a law in this state in reference to the admission of incompetent exhibits. Crane & Ordway Company v. Jones, 113 N. W. R. 81. We cite: Doolittle v. Stone, 136 N. Y. 614.

Memoranda written by a deceased person upon dates of a calendar indicating payments of money to his creditor, but not specifying the amounts, nor shown to have been made in regular course of business or to have been continuous, are not admissible as evidence that such payments were made. Hay v. Peterson, 34 L. R. A. 581 (Wyo.); Williams v. Clink, 51 N. W. R. 454 (Mich.); Briggs v. N. Y. C. & H. R. Co., 177 N. Y. 59.

It is claimed by appellants that the plaintiff ought not to be heard to complain of the ruling of the court in admitting the testimony referred to, because its own witness had given testimony of the same character, but as was said when the case was here before, the introduction of irrelevant evidence upon one side without objection does not justify the introduction of irrelevant evidence upon the other side. San Diego Land & Town Co. v. Neal, 11 L. R. A. 609 (Cal.); Thomas v. Black, 23 Pac. 1037; O'Brien v. Bennett, 69 N. Y. S. 298; Orr v. Miller, 98 Ind. 443; Montgomery Street Railway Co. v. Hastings, 35 Southern 412 (Ala.); Galveston H. & S. R. Co. v. Sullivan, 42 S. W. 568 (Tex.) Romanie v. San Antone Transaction Co., 77 S. W. 36; Fountain v. Wabash Railway Co., 90 S. W. 393 to 395 (Mo.); Phillips v. Postal Telegraph Co., 42 S. E. 587 (N. C.); Ency. of Law and Procedure, Vol. 4, page 491; Willer v. Hildebrand, 19 S. D. 50; Miller v. Durst, 14 S. D. 593.

Assignments 43, 44, 45, 46, 47 and 48 refer to conversations purported to have taken place between the defendant and Stella Beam and J. G. Lund in reference to some money deposited by Miss Beam, and some business transaction she and the defendant had with Mr. Lund. In the first place, this testimony is hearsay, and ought not to have been received. In the second place, it is incompetent and without the issues involved in this case, and do not tend to throw any light upon the case before the court.

Assignments 49, 50, 51, 52 and 53 can readily be considered together. They relate to some slip of paper that is not in evidence, and concerning which the defendant had no right to testify. They do not throw any light upon the issues involved in this case. They are incompetent for any purpose, and in addition to

that, they are not the best evidence. No proper foundation was laid for the introduction of secondary evidence. Miller v. Durst, 14 S. D. 591.

Assignment 55, 56, 57, 58 and 59 all relate to some transaction had between the defendant and J. G. Lund, (See Abs. Fol. 604), wherein Lund and the defendant purchased land together as co-partners and Lund was selling same and dividing the profits with the defendant. These issues are not involved in this case. Mr. Lund is not on trial.

Assignments 65, 66, 67, 68, 69, 70, 71 and 72 are all questions based upon Exhibit "12," which is a mere memorandum, (See Abs. Fol. 618), and call for conclusions of the witness, and do not prove or disprove any issue in this case. Now this testimony must be considered as prejudicial to the plaintiff, because it was certainly error to admit it, and the jury might reasonably gather from this kind of testimony that Lund and the defendant had settled up in full, and that he would care for all notes signed by the defendant, and that she would not be liable thereon regardless as to who might own or hold the note or notes.

Assignment 77 is subject to the same comment (Abs. Fol. 632), wherein the defendant asked whether she ever received any consideration on Exhibit "B." There can be no question but what this was error, and that under no possible construction could it be considered as harmless error.

Assignments 87 to 97 inclusive all relate to testimony given by the witnesses Beam and Rice and relate to conversations had between said witnesses and the defendant, and some conversations had with J. G. Lund. This testimony is certainly incompetent, immaterial and irrelevant for any purpose, and is all hearsay testimony.

We believe that a great deal of the evidence admitted by the trial court was objectionable, because it was hearsay. This applies particularly to the testimony of the defendant where she testified to statements and admissions claimed to have been made by J. G. Lund and not made in the presence of the plaintiff, and which statements and admissions were not a part of the res gestae; and the testimony of the witnesses Rice and Beam. We refer

particularly to Assignments 7, 8, 9 ,33, 36, 38,- 44, 45, 48, 56 62, 63, 64, 79, 84, 85, 87, 90, 96, 97, (Abs. folios 542-574-615.) Crawford et al. v. Trans. Atl. Fire Ins. Co., 58 Pac. 177; Beasley v. San Jose Fruit Packing Company, 28 Pac. 485; Tenny v. Rapid City, 96 N. W. R. 96; Vol. 6 of Ency of Evidence, 443; Hopt v. Utah, 110 U. S. 574; Ohio & Miss. R. Co. v. Stein, 19 L. R. A. 751; Morrill v. Morrill, 60 N. E. R. 1093 (Ind.); Jackson, etc., v. Inman, 118 N. W. R. 189 (Wis.); People v. Gonzalez, 91 Pac: 1031 (Cal.)

Appellant requested the court to give certain instructions as to what constituted good faith and the purchase of negotiable instruments in the usual course of business, before maturity, etc., an instruction that we believe applicable to the case at bar. Instructions 4 to 10 inclusive, 17, 21, 22, 23, 27, 28 and 29 (See Abs. Fol. 431.) These instructions were based upon the statute of our own state, and instructions generally given by the court and recognized by the court as to be based upon almost universal law.

"The signature of every drawer, acceptor and indorser of a negotiable instrument is presumed to have been made for a valuable consideration before the maturity of the instrument, and in the ordinary course of business." Civil Code, Section 2182; Stone v .Crow, 2 S. D. 530.

"An indorsee in due course is one who, in good faith and in the ordinary course of business for value and before its apparent maturity or presumed dishonor, and without notice of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer." Section 2199, Civil Code; Thompson v. Bank, 150 U. S. 231; McCormick v. Taylor, 5 N. D. 53; Ist Nat'l. Bank v. Flath, 86 N. W. R. 868; Daniel on Negotiable Instruments, Vol. 1, page 806; Brickwood's Sackett on Instructions, Sections 2134, 2168, 2169, 2176, and cases cited; Sackett, Sec. 2173; Cook v. Helms, 5 Wis. 107; Deputy v. Schuyler, 45 Ill. 306; Travlers Ins. Co. v. Clark, 59 S. W. 7; Thorp v. Goewey, 85 Ill. 611; Brickwood's Sackett on Instructions, 4202; Kimmel v. Nagele, 84 Ill. App. 22; Brickwood's Sackett, Sec. 4209; Lehman v. Press, 76 N. W. R. 818 (Ia), and cases cited therein; Chicago, B. & N. Q. R. Co. v. Greenfield, 53

.Ill. App. 424; Brickwood's Sackett, Sec. 3743; Shaw v. Gilbert, 86 N. W. R. 188; Schroeder v. Walsh, 11 N. E. R. 70; Watkins v. Wallace, 19 Mich. 57.

We call the court's attention to the insufficiency of the evidence. to justify the verdict and ask the court to examine the notes themselves, the indorsements upon the back, or to examine carefully the photographic copies and compare same with the admitted signatures of the defendant, and the court can readily see that these instruments were all written with the same hand, and we are satisfied that if the only question of forgery had been submitted to the jury, that the verdict would have been necessarily for the plaintiff upon all the issues.

L. W. Crofoot and A. W. Campbell (Keen, Whalen & Hempstead of Counsel), for Respondent.

Under the pleadings the following issues were submitted to the jury:

(a)    Forgery;

(b)    The position of plaintiff as a bona fide holder of commercial paper;

(c)    Total want of consideration;

(d)    The procurement of the defendant's signature by some fraudulent craft, trick, scheme, device or artifice as to the nature and terms of the note, without negligence on the part of the defendant.

The jury returned a general verdict in favor of the defendant upon all the issues.

The evidence is clear that these notes are not founded upon any consideration whatever, and aside from. the question of forgery (as to which there is a conflict of evidence), the proof was directed to show two separate and distinct facts, either of which would be sufficient to defeat the plaintiff's right of recovery:

(a)    That the plaintiff is not a bona fide holder, under the law protecting the holders of negotiable instruments; and

(b)    That the defendant's signature was obtained without her negligence, by means of some fraudulent craft, trick, scheme,

device or artifice as to the contents of the notes, which, under the Minnesota statute, prevents a recovery whether the plaintiff be a bona fide holder or not.

These defenses are entirely independent and are not inconsistent. Hinkley v. Freick, 127 N. W. 940.

Proof of fraud in the inception of the note shifts the burden of proof to the plaintiff and he must respond by showing that he acquired it bona fide, for value, in the usual course of business and under circumstances which created no presumption that he knew facts which would impeach its validity. Landauer v. Sioux Falls Implement Co., 10 S. D. 205; Kirby v. Berguin, 15 S. D. 444; McGill v. Young, 16 S. D. 360; Bank v. Sherman, 19 S. D. 238; Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Mee v. Carlson, 22 S. D. 365, 117 N. W. 1033; Smith v. Kipp et al., (Wis.) 118 N. W. 848; Biddeford Nat. Bank v. Hill, (Me.) 66 Atl. 721; Yakima Valley Bank v. McAllister, (Wash.) 79 Pac. 1119; People's State Bank v. Ruxer, (Ind.) 67 N. E. 542, and numerous cases cited from that state; Home Nat. Bank v. Hill, (Ind.) 74 N. E. 1086; New Madrid Banking Co. v. Poplin, (Mo.) 108 S. W. 115, citing several Missouri cases.

Where issue is joined on an allegation in the complaint that a promissory note payable to order was sold, indorsed and transferred to the plaintiff in good faith before maturity, the burden is on the plaintiff to establish the proof of such allegation, including the fact that the note was in fact indorsed by the payee; and the mere fact that a promissory note, when offered in evidence, has indorsed upon its back the name of the payee, does not establish the fact that the payee indorsed the same, in the absence of proof of actual indorsement. Vickery v. Burton, (N. D.) 69 N. W. 193.

If, in the confusion of signing a number of papers at once, an extra signature was fraudulently obtained to some paper which she did not know of or intend to sign, this statute will protect her, even though she may not be able to say just how it was accomplished.

Such is the view taken by the Supreme Court of Minnesota in regard to the statute. First National Bank v. Holan, 63 Minn.

525; 65 N. W. 952; Bank of Glencoe v. Cain, 89 Minn. 473; 95
N. W. 308; Farris v. Koplau, 129 N. W. 770; First National
Bank v. Holan, supra; Ward v. Johnson 51 Minn. 480, 53 N. W.
766; Yellow Medicine Co. Bank v. Tagley, 57 Minn. 391, 59 N.
W. 486; Yellow Medicine Co. Bank v. Wiger, 61 N. W. 452;
O'Gara, King & Co. v. Hansing, 88 Minn. 401, 93 N. W. 307;
Johnson Co. Bank v. Hall, 102 Minn. 414, 113 N. W. 1011; Sib-
ley Co. Bank v. Schaus, 104 Minn. 439, 116 N. W. 928; Hinkley
v. Freick, 127 N. W. 940; First Nat. Bank v. Doeden, 21 S. D.
400, 113 N. W. 81.

The defense under the Minnesota statute is entirely independ-
ent of the plaintiff's position as a bona fide holder, and the only
questions at issue are fraud in obtaining the signature, which
necessarily involves the fraudulent intent or purpose, and want
of negligence on the part of the defendant.

The intent with which an act is done may be shown by cir-
cumstances, and where the only question in issue is the fraudulent
intent of a particular person, great latitude is allowed in the intro-
duction of evidence for this purpose, and his intent may be
shown by his acts, conduct or declarations, either oral or written,
and whether made before or after or at the particular time of the
transaction under investigation.

The whole transaction involving an alleged fraud may be
given in evidence and every relevant circumstance in the condi-
tion and relation of the parties and every act and declaration of
the party charged with fraud, is competent evidence, if in the
opinion of the court it bears such a relation to the transaction
under investigation as to persuade the jury that the allegation of
fraud is or is not well founded.   20 Cyc., pages 110, 116; Van
Sickle v. Shenk, 50 N. E. 381, and cases cited; Paulson Mer. Co.
v. Seaver, (N. D.) 77 N. W. 1001; Grimes v. Hill, (Col.) 25
Pac. 699; O'Hare v. Duckworth, (Wash.) 30 Pac. 724.

"As previously indicated, circumstantial evidence is admissible
to prove fraudulent intent, and great latitude is allowed in the
introduction of evidence for this purpose.   Evidence of defendant's
subsequent conduct may be admissible to show fraudulent intent
or motive for making the alleged fraudulent representation."

Title Fraud, 20 Cyc. 116, 122; Title Evidence, 16 Cyc. 998; Title Evidence, 16 Cyc. 1184-1186; Cummings v. Cummings, 5 Watts & S. 553; Minx v. Mitchell, (Kan.) 22 Pac. 710.

The evidence of the settlement made between the defendant and J. G. Lund of the only transaction out of which the $700 note could possibly have arisen, we think was admissible and competent to show the continued concealment by J. G. Lund of the existence of the $700 note as indicating his intent and design in the original transaction.

We think this evidence was clearly admissible for three reasons:

1. An essential issue under the Minnesota statute is the securing of the defendant's signature by means of a fraudulent trick or artifice, in which his motive is an important element; and this issue is entirely independent of the plaintiff's position in regard to this note. Upon this question of fraudulent intent, the subsequent acts and declarations indicating the intent are just as competent as though J. G. Lund were himself a party to this suit, and the concealment by him at that time of the existence of this note tends to show the existence of such intent at the time he obtained her signature by means of his fraudulent trick or artifice.

2. As it was a settlement of the very transaction out of which it is claimed this note arose, it seems to be admissible upon the res gestae.

3. The plaintiff, in its case in chief, called the defendant to prove her signature to Exhibit 2, and then offered it in evidence as a standard of comparison for the disputed signatures on Exhibits A and B. This exhibit contains a reference to a note of $700 as forming part of the consideration and, as the contract bore the same date as the disputed note, it was perfectly apparent that this exhibit might be considered by the jury as evidence that the defendant had signed the note in question as part of the consideration of that contract, notwithstanding the limited purpose for which it was offered. The defendant could not safely leave the evidence in this condition, and it was proper for her to show that the contract was altered after she signed it, and by circumstantial evidence to show when and where and how it was al-

tered, and also as corroboration the settlement made with Lund under the contract, wherein the existence of the note was concealed.

Having opened the door for this proof, it does not lie in the mouth of the plaintiff to say that this evidence was incompetent.

To guard against any improper inference by the jury, the court instructed the jury in accordance with the law as laid down in the authorities cited in appellant's brief, by saying that the discount of bill of exchange and the discount of commercial or business paper actually owned by the person negotiating the same should not be considered as money borrowed.

We fail to see how the giving of this instruction or the failure to give the instruction requested could in any manner operate to the prejudice of the appellant.

McCOY, P. J.   Plaintiff brought this action to recover of defendant the amount claimed to be due upon two alleged promissory notes, viz., one note for $700, dated March 31, 1906, due one year after date, payable to the order of plaintiff and purporting to be signed by Lizzie E. Jones as maker thereof and which note had indorsed on the back thereof, "Paid by J. G. Lund 9-5-'06, $200.00," and "For value received I hereby sell and assign to the First National Bank of West Minneapolis, Minn., or order, the principle and interest of the within, and guarantee same waving demand, notice and protest.   J. G. Lund"; and one other note for $2,000, dated June 16, 1906 due one year after date. payable to the order of J. G. Lund and purporting to be signed by Lizzie E. Jones and Stella A. Beam, by L. E. Jones, which note had indorsed thereon, "Without recourse, J. G. Lund," and "For value received I hereby guarantee the payment of the within note at maturity, or any time thereafter, with interest at the rate of —— per cent. per annum, until paid, waiving demand, notice of non-payment and protest.   J. G. Lund."   The defendant, Lizzie E. Jones, who is now Mrs. Lizzie E. Harvey, denied that she ever made, gave, or executed either of said notes, and that the same are forgeries; and if the signatures thereto of Lizzie E. Jones are in fact her genuine signatures, the same were procured by means

of some fraud, circumvention, or legerdemain unknown to her. The jury found with defendant upon all the issues. Plaintiff appeals.

Appellant first contends that the evidence is insufficient to justify the verdict, but we are of the opinion that there was ample evidence submitted to justify the verdict. It will serve no useful purpose to set out the voluminous evidence herein. Many alleged errors are assigned based upon the reception or rejection of evidence. Mrs. Harvey was examined as a witness in her own behalf, and on direct examination was asked to testify in relation to a certain conversation had with J. G. Lund in the spring of 1908, the exact date of which conversation is not shown by the record, but the same occurred during a settlement between her and Lund of their business transaction concerning a real estate contract, the final settlement of which was evidenced by a written memorandum bearing date June 24, 1908. Mrs. Harvey was permitted to testify, over the objections of plaintiff, that the same was hearsay and not within the issues; that during the progress of said settlement she asked Lund what the mention of a $700 note appearing in her contract meant, and to which Lund replied, "I do not know, but guess somebody else's contract got mixed up with this." It is contended by appellant that this testimony should not have been admitted because the conversation took place long after the said note had been transferred and assigned to plaintiff; that as to plaintiff the said conversation and statements of Lund were hearsay and not binding upon plaintiff.

[1] It is a general rule that the statements of a former owner of negotiable paper made concerning the same, after a transfer thereof to a third party, are not binding upon such third party and are hearsay, but there are some well-recognized exceptions to this general rule, and we are of the opinion this testimony is clearly within the exceptions. It seems to be held by many courts that, where a note is obtained by fraud or circumvention and is transferred to a party who participates in such fraud, and where the transfer itself was fraudulent and made for the purpose of cutting off the defense of the maker of the note as against such fraud and circumvention, then and under such circumstances the original

payee of the note is still deemed to be the owner thereof, and statements made by him are competent and proper evidence to go to the jury on the question of fraudulent intent in the inception of the note sued upon.

[2] When the question of the admissibility of this evidence as to said conversation with Lund arose on the trial, it was for the trial court to determine whether the evidence then given was sufficient to authorize the jury in finding that said notes were obtained by fraud and circumvention; whether said Lund, notwithstanding said purported transfer to plaintiff, still had such an interest in said notes as would render his statements admissible; whether said transfer to plaintiff was in bad faith and made for the purpose of cutting off defenses of the maker; whether plaintiff participated in the procuring of said notes by fraud and circumvention and the bad faith transfer thereof to plaintiff; if the facts and circumstances then before the jury were sufficient to warrant them in so finding—then the court committed no error in overruling plaintiff's objections.   1 Ency. Ev. pp. 532 to 537; Holmes v. Roper, 141 N. Y. 64, 36 N. E. 180; Gardner v. Barden, 34 N. Y. 433; McKean v. Adams, 11 Misc. Rep. 387, 32 N. Y. Supp. 281; Hogan v. Sherman, 5 Mich. 60; 6 Ency. Ev. pp. 14-16; Smith v. Livingston, 111 Mass. 342; Mee v. Carlson, 22 S. D. 365, 117 N. W. 1033, 29 L. R. A. (N. S.) 351; Iowa Bank v. Sherman, 19 S. D. 238, 103 N. W. 19, 117 Am. St. Rep. 941.

[3] The defendant, Mrs. Harvey, testified that never to her knowledge did she execute either of said notes sued upon in this action, and that she never saw either of said notes until the same were presented to her for payment at her home in North Dakota in December, 1908; that the first she ever knew or heard anything about a $700 note in connection with her deals with Mr. Lund was in the spring of 1908 when she had said conversation with Lund—the statements contained in which conversation are objected to by plaintiff—and never heard of said $2,000 note until the same was presented to her for payment.   It appears that Mrs. Harvey was formerly Lizzie E. Jones, and as such had business dealings with J. G. Lund, at his office in the city of Minneapolis, concerning the purchase and sale of said real estate.

and that on March 31, 1906, they entered into what was denominated a "half profit contract of purchase," whereby she was to furnish certain funds to him to be invested in real estate, and whatever profits accrued from the investments were to be divided between them. The said contract contained a clause as follows: "Cash $1,600.00, note $700.00 due one year, and assume mortgage $3,000.00, and by credit $200.00."

Mrs. Harvey testified this clause of the contract had been altered and changed after the execution and delivery thereof by her by writing therein the words and figures: "Note $700.00 due 1 yr., and assume mortgage $3,000.00 and by credit $200.00" —that after the figures $1,600 there was a blank line when she executed and delivered the contract, and that the balance of the clause had been filled in thereafter by some one without her knowledge or consent, and that she first discovered the alteration when making a final settlement of her land dealings with Mr. Lund in 1908, at the time the conversation took place to which plaintiff makes objection. Mrs. Harvey testified that on March 31, 1906, at the time said contract was executed, no mention was made of a $700 note, or the necessity thereof; that all that was required of her was to put up $1,600 cash; that she at that time did not have the cash, but expected to receive the same in a few days from Iowa from a sale of land there; that Lund stated he would let her have the cash; that on that day she did execute and deliver to Lund her note for $1,600, payable on demand, with no payee named therein, payable at the First National Bank of West Minneapolis, Minn., and which note she thereafter within a very short time paid to Lund, but which note was not redelivered to her until long after the commencement of this action; that she at no time ever had any business transaction of any kind or character with plaintiff, and never, as a matter of fact, knew that such a bank existed until long after the time of the purported making of said notes sued upon in this action. Mrs. Harvey further testified that on the 16th day of June, 1906, she was in the office of Mr. Lund in company with Stella A. Beam, a school-teacher; that no business was transacted; they only talked regarding investments. "On June 17th I was again at the office of Mr. Lund

and left with him for safe-keeping for Stella A. Beam $100 of her money. I had told her I had confidence in him; he said it was safer with him than in a bank; and he gave me a receipt for the money. He then said he wanted a slip to file away in his office to show by whom this money was left, and then he placed a paper before me and asked me to sign my name and the name of Stella A. Beam, by L. E. Jones, which I did. There was no writing of any kind on this paper. It was five to seven inches long, and from three to four inches wide, colored paper. I never signed the $2,000 note myself or for Stella A. Beam, by L. E. Jones; never saw or knew of such note until December, 1908. There was no talk between me and Lund about executing such a note. There was no talk with Stella A. Beam about executing such a note.",

The evidence further shows that at different times after March 31, 1906, in their land dealings, Mrs. Harvey, as Lizzie E. Jones, executed three other promissory notes and delivered them to Lund, about which there is no controversy, and all of which notes are accounted for and included in the computations of the final settlement of said land transactions between Mrs. Harvey and Lund, bearing date June 24, 1908; that there was no reference made in sid final settlement to either of the notes in question in this action, and that the same did not enter into the computations of said settlement in any manner; that the only reference in any way made to a $700 note was in the conversation objected to by plaintiff; that the said setlement included the whole of the real estate transactions had between Mrs. Harvey and Lund. It further appears that Mrs. Harvey, as Lizzie E. Jones, had resided in and around Minneapolis for some 15 years teaching in the public schools, and in 1906 and 1907 was engaged in running a boarding house in Minneapolis; and, getting married, moved to Dexter, Minn., and later to Bowman, N. D., and that during all said time she was almost continually, before and after leaving Minneapolis, corresponding with Lund concerning their joint land deal, and that she was never in any manner notified, either by plaintiff or Lund, that said notes sued upon in this action were due, and requesting her to make payment, until December, 1908, after the death of

Mr. Lund. Neither was any demand at any time ever made upon Stella A. Beam to pay said $2,000 note, although she had been a teacher in the Minneapolis schools for some seven years. The $100 deposit for safe-keeping was entered on the books of Lund as money paid to be invested by him in real estate. Stella A Beam testified the money was left for safe-keeping, and not for investment, and that she had the receipt for the same, and that the same was afterwards repaid to her by Miss Race, Lund's cashier in his main office.

It appears that Lund had been extensively engaged for many years in the real estate business with offices at Canby and Minneapolis, Minn.; that he caused to be organized the First National Bank of West Minneapolis, the plaintiff, in connection with his real estate business; that he was president and owner of the majority of the stock of plaintiff, was a director, chairman of discount committee, and, in fact, general manager of plaintiff; that the cashier and most of the employes of plaintiff were and had been employes of Lund for many years prior to the organization of plaintiff. The evidence shows that the said $700 note came into the possession of plaintiff on March 31, 1906, through the Lund land office, and that the same was charged to Lund's account. The plaintiff does not claim ever to have had any business dealings with Mrs. Harvey concerning the making of said note, but the plaintiff obtained it from Lund. The assignment of Lund on the back of said note was not placed thereon until nearly two years after the same came into the possession of plaintiff; it being claimed that Lund sold his interest in plaintiff bank to Shaffer Bros. & Brown about February 28, 1908, and this assignment and indorsement was placed on the back of the note on that occasion. This $700 note was made on a printed blank form having printed thereon after the blank space for the name of the payee, "At First National Bank of West Minneapolis." In the making of this note the place for the name of the payee was left blank, no name of the payee being written therein; the word "at" preceding the name of plaintiff was crossed with a pencil mark; the other written portions of the note are in ink. The note for $1,600 given by Mrs. Harvey to Lund on the same date is on the same form of

blank, with the name of the payee left blank, and the word "at" not crossed. All these facts and circumstances, and many more of the same nature, were before the trial court and injury when the court was called upon to rule on plaintiff's objection to the conversation between Mrs. Harvey and Lund.

The jury would have been warranted, under this evidence, in finding that said purported transfer to plaintiff of said note was colorably only, and not in fact made at all, and that there was no change in the identity of interest or ownership. The fact that Lund, nearly two years after said note went into the possession of plaintiff as payee thereof, formally assigned the same to plaintiff and guaranteed the payment thereof would have a tendency to show that plaintiff was still exercising ownership. He did not make this assignment on behalf of the bank. If plaintiff was the owner of said note by being the payee, it was unnecessary to again make plaintiff the owner thereof by formal assignment. The jury would have been warranted under the evidence disclosed in finding that plaintiff knowingly participated in the obtaining of said note by fraud and circumvention. This note was made payable to plaintiff, who brings suit thereon as the original owner. It does not purport to be the note of Lund.

[4] Plaintiff, being a corporation, could only act by and through its officers and managers.

[5] If this note was forged, or the signature thereto obtained by some fraudulent trick or legerdemain, Lund, president of the bank, did it, or caused it to be done. Plaintiff obtained possession of the note from Lund. The allegations of the complaint are that defendant, Lizzie E. Jones, executed and delivered said note to plaintiff, therefore, in taking this note, Lund was not acting as Lund of the land department, but as president of plaintiff. The evidence on the part of plaintiff to the effect that it purchased said note from Lund for $686, in due coure of banking business, does not at all correspond to the theory of the complaint. Whatever knowledge Lund possessed as to the origina of the notes in question must be imputed to plaintiff. Under the circumstances of this case, the ends of justice should not be defeated by permitting Lund to divide himself into two beings, one as manager and owner of

the Lund land business, and the other as president, director chairman of discount committee, and general manager of plaintiff, and then say that one part of Lund had no knowledge or notice of what the other part of Lund knew or did. For the purposes of this action plaintiff stands in the shoes of Lund, and whatever would have been a good defense and proper evidence against Lund, were he plaintiff, would also be a good defense and proper evidence against plaintiff. As to the $700 note, plaintiff stands as the original payee and original party thereto, and there is no evidence in this case showing that Lund was not still interested in said note at the time he made the statements in relation thereto to Mrs. Harvey, which is the basis of plaintiff's objections. The assignment of Lund on the back of said note is said to have been placed there on the occasion of his disposing of his interest in said bank to Shaffer Bros. & Brown. There is no evidence showing a sale by Lund to these parties other than an incidental reference thereto in the form of a conclusion.

[6] The burden was on plaintiff to show the bona fides, for value, of the transfer of said note to plaintiff, and by which Lund lost his interest therein. Mee v. Carlson, supra. Plaintiff does not claim to be the owner of said note by virtue of said assignment of February 28, 1908. No consideration of any kind or character from Shaffer Bros. & Brown to Lund has been shown, or whether said transaction was a bona fide real transfer or only fictitious.

[7] One standing in the position of defendant in this case can seldom, if ever, be expected to establish fraud by direct proof, but can only rely upon the visible surrounding circumstances connected with the transactions and acts of the interested parties. Persons committing such frauds act with great caution and secrecy, and the direct evidence thereof is, in most cases, only known to them who participate therein, and under such circumstances less evidence is required to establish the fact of the fraud than where direct evidence is obtainable. Jones, Ev. §§ 12, 179, and 190; 6 Ency. Ev. p. 18; Burch v. Smith, 15 Tex. 219, 65 Am. Dec. 154, and note.

[8] On the issue of fraud, great latitude is permitted in the introduction of evidence. The whole transaction from start to finish may be scrutinized. Statements and acts of the parties before and after the completion of the transaction are competent as throwing light upon their intentions.

[9] The limit of the scope and latitude in the introduction of such testimony is within the sound discretion of the trial court, and only becomes error when it clearly appears there had been an abuse of such discretion. 20 Cyc. 110.

[10] The facts and circumstances of said real estate transaction between Mrs. Harvey and Lund from start to finish were material and a part of the res gestæ of the surrounding facts and circumstances of the giving of said notes, which included said final settlement as the final completion of said transactions. The said statement of Lund to Mrs. Harvey, concerning said note for $700, at the time said settlement was in progress, was more than a mere declaration or admission against interest, but was a verbal act constituting a part of the transaction itself. Wigmore, Ev. §§ 1745-1776.

[11] The entire transaction between Lund and defendant was relevant, although a part thereof occured after the delivery of said note to plaintiff. Plaintiff called Mrs. Harvey as its own witness and interrogated her in regard to her land transaction with Lund, and defendant was therefore entitled to show the whole transaction. This was the situation as it existed before the trial court at the time the testimony objected to was offered. We are of the opinion the learned trial court committed no error in admitting such testimony. We have carefully considered each assignment of error and are of the opinion that no prejudicial error exists.

[12] Objections were made to certain testimony of Stella A. Beam concerning her transactions with Mr. Lund, but her evidence as a whole was clearly within the rule defined in sections 2141-2142, Elliott Ev.

[13] A portion of her testimony was not the best evidence, but no prejudicial error occurred by its admission, as such testi-

mony related to certain correspondence purely incidental in its nature and not in issue.

[14] Some objections were made to certain instructions of the court, but such instructions were more favorable to plaintiff than were warranted by the evidence, and would not constitute prejudicial error.

The judgment and order appealed from are affirmed.

WHITING, J. (dissenting). One John G. Lund was, in the spring of 1906 and from that time down to the date of his death in the fall of 1908, engaged in the real estate business with an office at Minneapolis, Minn. From the spring of 1906 down to some time in February, 1908, he was the president of the plaintiff corporation, and during the year 1906 a member of its discount committee. In the spring of 1906 the defendant had several interviews with Mr. Lund in relation to investing in farm lands. He submitted to her what was called his profit-sharing plan, and their negotiations finally led to an offer by him to buy for her two quarter sections of land on such profit-sharing plan. He drafted and submitted for her consideration one of the two copies of a contract which are known in the record as Exhibits "2" and "2½." The defendant and Lund on March 31, 1906, entered into such contract. Under the terms of such contract defendant was to advance $1,600 in cash, but, not having yet received the returns from the sale of some property she had sold, Lund took her demand note for $1,600.

Defendant contends that this $1,600 was the only money to be advanced by defendant, and that, under their contract, she was to give no other note, and that none other was in any manner suggested. The $1,600 note, together with the $700 note in suit, were negotiated by Lund with the plaintiff bank on March 31, 1906. The $700 note was a blank form which read in part: "Promise to pay to the order of ———— at First National Bank of West Minneapolis." By leaving the blank space unfilled and crossing out word "at," the note was made payable to plaintiff. It is the theory of the plaintiff that the $700 note was executed by defendant under the terms of the land contract entered into

on March 31st; that it was executed for the purpose of procuring more money with which to consummate the purchase contemplated by such contract; and that Lund was defendant's agent in procuring from plaintiff the money thereon. Exhibits 2 and 2½ were printed forms filled out to cover the particular contract entered into. After a line wherein was stated the total purchase price of the land to be purchased ($5,500), and the fact that defendant was to pay $1,600 thereof in cash, there followed a line containing no printed matter whatever. Exhibit 2, which was the copy retained by Lund, had written upon such blank line the following: "Note $700. Due 1 year, and assume mortgages of $3,000 and by credit $200." Exhibit 2½, being the one the possession of which had been held by defendant, had written upon such blank line: "Note $700, $200 credit from books, and assume mortgages $3,000." It is the theory of plaintiff that the $700 note sued upon is one and the same as the $700 note referred to in said contract, and that the credit of $200 was given by Lund to defendant in consideration of her having furnished to him a purchaser for 200 acres of other land. On the other hand, defendant contends that, as originally excuted, such contract had nothing written upon the blank line, and that, while she received a credit from Lund for having furnished a purchaser, such credit was neither earned by nor given to her until some time subsequent to March 31st, and must therefore have been unknown at that date. Defendant contends that these blank lines in Exhibits 2 and 2½ were not filled when the exhibits were signed, and that the blank in 2½ was filled without her knowledge upon June 27, 1906, upon the occasion of a visit by her to the office of Lund, at which time she claims to have left Exhibit 2½ in Lund's outer office while she was entering into another contract with Lund in his inner office. She testified that a clerk of Lund's (being one and the same person who drafted the contracts originally) was in the outer office where she left Exhibit 2½, and knew of its being there; and it is her theory that, while she was in the inner office, said clerk wrote into her copy what now appears upon the blank line for the purpose of creating an apparent explanation for the existence of the $700 note which had theretofore either been forged or signature

procured thereto by trick artifice, or sleight of hand. Defendant testified that, from the time that she left Exhibit 2½ in the outer office when going into Lund's private office, she never had occasion to examine it until about June 1908, and therefore, until such time, had no knowledge of the alteration of such Exhibit nor any notice of the apparent existence of a note for $700 against her. The books of the Lund land office were introduced in evidence. These books tended to corroborate the plaintiff as they gave credit for the $700 note under date of March 31st.

Conceding that all the evidence offered and received, with the exception of that hereinafter referred to, was properly received, it was such as was readily susceptible of either of two constructions; under one of which the transactions, out of which the notes appear to have sprung, would be such as would tend to show the notes to be the contracts of defendant and valid in the hands of plaintiff, under the other of which the transactions, out of which the plaintiff claims the notes to have sprung, would appear tainted with fraud, the notes never to have had legal existence, no consideration for the giving of the notes to have existed, and the plaintiff not a good-faith purchaser without notice of defenses. The construction which the jury would place upon the proof submitted would, from the very nature of the issues raised and the contention of the respective parties, naturally depend largely upon the juror's views as to the honesty and integrity of Lund, thus rendering very prejudicial any incompetent testimony, received under the sanction of the rulings of the trial court, in any manner reflecting upon the business methods of said Lund, or tending to prove any admissions made by him.

Defendant was allowed to testify concerning a statement which she claimed Lund made to her in June, 1908, which statement would clearly tend to corroborate defendant in her claim that she never executed the $700 note. June, 1908, was after Lund sold out his interest in the plaintiff. The admission of this last evidence tends to show that it must have been the theory of the trial court that any evidence of what Lund said or did in relation to the notes or the land transactions with which they were supposed to be connected, no matter if such statements were later in

date to, and entirely unconnected with, the execution of the notes, was competent to prove the invalidity of such notes. It must be remembered that we have not presented to us a question of the competency of a party's statements if received from his lips while a witness upon the stand in this case, nor a question as to the admissibility of statements in derogation of his title to property by one then in possession of such property, nor a question of the admissibility of statements made by one shown to be a co-conspirator with the party against whom the evidence was offered, but solely whether one can testify as to statements made by another, which statements cannot be deemed admissions of the party against whom received. If Lund had made a statement to some party not interested in this action, which statement was made long after the dates of the notes in suit, and in such statement he had specifically set forth the forgery of the notes and detailed the methods used to accomplish the forgeries, under what possible rule of law would it have been competent to call the party hearing such statements and receive his testimony in relation to same? Respondent has cited some authorities which she claims announce rules admitting such evidence, but an examination of the same show that they are entirely foreign to the question presented.

My colleague, in the majority opinion herein, calls attention to the one case where evidence of such statements is admissible, namely, where a note has been transferred for the sole and fraudulent purpose of defeating some meritorious defense. In such case, any statement made by the fraudulent transferor, after such transfer, is admissible against the holder of the note, upon the theory that the transferror is yet the real owner of the note and has no application whatsoever except in a case where there has been a purported assignment of the note. See cases cited in majority opinion. That this rule has no application to the facts in this case seems to me perfectly clear, and for two reasons: (1) This cause was tried by the trial court, as evidenced by its instructions to the jury, upon the theory that this note should in every respect be treated as a note running to plaintiff as payee and in relation to which no question of transfer by Lund was involved. It is clear that the rule laid down in the majority opinion has

absolutely no application except where the statements offered in evidence were made by one who was at one time the owner of the note and has passed title to such note for a fraudulent purpose. In view of the instructions of the court, we would have no right to apply such rule to this case for the purpose of sustaining the judgment. (2) Conceding, however, that Lund was the real payee of this note, and that he had put the title to the same into the name of plaintiff in order to defeat some feared defense, meritorious or otherwise, while the bank so held the note, Lund being the real owner, any statements made by him would be admissible in a suit by the bank on the note. But if Lund should afterwards part with all interest in the note, and it should be held by the transferee not for the purpose of cutting out some feared defense, but as the real owner thereof, from that moment any statements by Lund impugning the validity of such note become inadmissible in evidence except as they fall from the lips of Lund when a witness in court. In this case, whatever interest Lund ever had in such note, if he had any, passed from him when he sold his interest in the bank, which sale was several months before it is claimed he made the alleged statement.

In McKean v. Adams, cited in the majority opinion, the true rule is recognized that admissions of transferror are admissible when transfer is merely colorable; that case citing Paige v. Cagwin, 7 Hill (N. Y.) 381, wherein it was said: "When such is the fact, there is no change of ownership. The party by whom the transfer is made is still the party in interest, and his declarations are clearly admissible." In Gardner v. Barden, also cited in majority opinion, it is held, as appears by the headnotes: "The declarations of an assignor are admissible against his assignee only where the interests of the parties remain unchanged by the apparent transaction and an identity of interests exists between the assignor and assignee." To same effect is Milliner v. Lucas, 3 Hun (N. Y.) 496. The holding in Holmes v. Roper and in Encly. of Evi., both cited in majority opinion, are exactly in line with the cases referred to above. The cases from Massachusetts and Michigan, as well as the two South Dakota cases cited by my colleagues, are cases in which the rule announced by my colleagues had no ap-

plication whatever; in the South Dakota cases this rule was in no manner referred to, and in the other cases, while recognized, it was held not applicable to facts proven.

Not only was evidence such as that mentioned above received, but evidence of matters absolutely unconnected with either of the notes and of a nature showing that it must have been offered solely to impugn the honesty of Lund was received. Defendant was allowed to testify in relation to one of the pieces of land described in Exhibit 2½. "He (Lund) sold it in May, 1907, and he never reported the sale, and, when I began to look him up in 1908, I discovered it had been sold but no report made of it." She was allowed to testify that Lund never made any purchase of land for her in compliance with a later contract entered into between them, though such fact was absolutely immaterial to any issues raised. Miss Beam was allowed to testify to receiving, in January, 1908, a letter from a clerk in Lund's office, advising her that there were rumors afloat that Lund was about to fail, and advising her, if she had any money with him, to get it at once. There are other errors in the admission and also in the rejection of evidence which I do not feel called upon to refer to. It surely cannot be claimed that the wrongful admission of the evidence above referred to was not prejudicial.

When we consider that the case made by the evidence of defendant, especially in so far as the obtaining of the signatures to the notes by fraud, trickery, etc., was, at the best, very speculative and conjectural, it was certainly grave error to allow the same to be bolstered up (saying nothing as to the bolstering up of the claim of forgery, lack of consideration, and that plaintiff was a purchaser with notice of defenses), by evidence such as this, which evidence the court, by receiving, virtually told the jury was competent and material and to be considered in reaching a verdict.