JAMES B. PECK, WILLIAM HEILMAN, AND EDWIN H. FRESMUTH, OWNERS OF THE STEAM-SHIP COLUMBUS, APPELLANTS, *v.* JOHN SANDERSON, LIBELLANT.

In a collision which took place at sea between a steam-ship and a schooner, by means of which the schooner was sunk and all on board perished, except the man at the helm, the evidence shows that it was not the fault of the steamer.

Although the night was starlight; yet there was a haze upon the ocean, which prevented the schooner from being seen until she came within a distance of two or three hundred yards. She was approaching as closehauled to the wind as she could be. Under these circumstances, the order to stop the engine and back, was judicious.

THIS was an appeal from the circuit court of the United States for the eastern district of Pennsylvania.

The circumstances of the case are particularly set forth in the opinion of the court.

It was argued by *Mr. Cutting*, for the appellants, and submitted, on a printed brief, by *Mr. J. Murray Rush*, for the appellee.

The arguments of the counsel turned entirely upon questions of fact, as deduced from the evidence in the case. There were no principles of law disputed, and under these circumstances the reporter has deemed it unadvisable to condense the arguments.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case arises out of a collision between the schooner Mission, of Edenton, in North Carolina, and the steam-ship Columbus, of Philadelphia. The schooner sunk immediately,

and all on board perished, with the exception of Wilson G. Burgess, a seaman, who succeeded in getting on board of The Columbus. The libel is filed by the owner of the schooner, and charges that the collision was occasioned by the fault of the steam-ship. The circuit court sustained the libel, and directed the respondents to pay the full value of The Mission and her cargo. And from that decree this appeal has been taken.

The only witness examined by the libellant is the seaman above mentioned. It appears from his testimony that the schooner was bound from Rum Key to Edenton, with a cargo of salt and some specie. The crew consisted of the captain, one mate, two able and one ordinary seamen, a cook, and a son of the captain, about twelve years old. About 12 o'clock, on the night of the collision, Burgess, and a seaman named Brown, and the master, came from below, it being their watch on deck. The master soon went below again, and remained there till after the collision, leaving no one on deck but the two seamen. Brown took the wheel and Burgess went forward; and at two o'clock in the morning, Burgess took the wheel and Brown went forward. Burgess states that it was a pretty clear night, with a moderate wind from northwest, the schooner heading north by east. The sails were trimmed flat aft; and the schooner was as closehauled to the wind as she could be. He could see nothing on the larboard side, because the sails intercepted his view. She carried no lights.

He had been at the wheel about half an hour when the collision took place. He heard a heavy crash; the wheel turned, flew out of his hands, and knocked him down. He ran forward, and saw a large vessel into them. Her bowsprit was between the schooner's jib and foremast, and extended over their forecastle deck. He got hold of her bowsprit shroud and got upon her deck. The schooner went down, and the rest of the crew perished.

Burgess states that he neither saw nor heard the steamer until the vessels came together. The Columbus was on the larboard side, and the sails of the schooner prevented him from seeing her. He never saw or heard Brown after he went forward, and he gave the witness no notice of the approach of the steam-ship.

On the part of The Columbus several witnesses were examined, and among them the mate, a seaman stationed on the look-out, and the engineer. There is no material discrepancy in their testimony, and the result of it is this:—

The steam-ship was a propeller, and a regular packet between Philadelphia and Charleston. She was on her voyage from the former place to the latter, with freight and passengers on board.

On the night of the collision, it was the mate's watch, from

twelve o'clock to four o'clock in the morning. He came from below at twelve o'clock, and saw that his men were keeping a look-out forward, and was also on the look-out himself. The wind was west-northwest, varying one or two points, and the steamer was heading southwest, and going at the rate of about eight and a half knots an hour. There was a heavy head sea, and the night was starlight, but not very clear, somewhat hazy. The ship carried a signal-light, (a globe lamp,) such as they usually carried, which was burning, and all the state-rooms were lighted. These lights could be seen from a distance, variously estimated by the witnesses from one to five miles. Her usual watch were on deck; two of them stationed on the forecastle deck on the look-out, and the mate was standing on the top of the skylight looking out for Cape Lookout light, the ship being then about ten miles from Cape Lookout breakers, and on soundings.

The Mission was first seen by one of the look-out, who immediately ran aft two or three steps, and sang out, "vessel right ahead." She was then at a distance of two or three hundred yards. And on such a night, a vessel like The Mission, with her sails hauled flat aft, and coming towards The Columbus edge on, and without lights, could not be seen at a greater distance.

The mate, as soon as the look-out cried "sail right ahead," jumped from the skylight, ordered the engineer to stop the engine, and ran forward. He saw The Mission a point or a point and a half on the larboard bow, apparently standing west by north, distant, as he conjectured, about two hundred yards. He could not see her very plain, her sails being presented to them edgewise. She was rather to windward of the steam-ship, and closehauled. He judged that he could not clear her by shifting the helm, and he ordered the engineer to back. The orders were instantly obeyed, and The Columbus was backing when the collision took place. It took place in less than a minute from the time the schooner was first seen.

The witnesses testify, that when at night the look-out cries out, "sail ahead," it is the duty and practice of steam vessels, when they are uncertain of the way the sail is standing, to stop the engine and back; and it is not usual or proper to change her course, before the course which the other vessel is steering is first ascertained. And among the witnesses who thus testify is a seaman who had been a pilot in the Bay of Delaware many years, and who happened to be on board The Columbus as passenger when this disaster happened.

Upon this statement of facts, gathered from the testimony on both sides, we see no just ground for imputing this unfortunate collision to negligence or want of skill in the management of The

Columbus. She was well lighted, and could be seen at a great distance. She had a sufficient look-out, properly stationed.

But it is said it was a starlight night, and if the look-out had been watchful, The Mission ought to have been seen at a greater distance. Undoubtedly there are nights in which such a vessel might be seen much further off; and in the night of which we are speaking, she might have been seen at a greater distance, if the whole breadth of her sails had been presented to the approaching vessel. But there are nights which may properly be called starlight, when there is a haze on the surface of the ocean which obstructs the vision. And the court cannot undertake to say, that in any night, whenever the stars are shining, a vessel like The Mission may be seen at a greater distance than two or three hundred yards, although she is approaching head on with her sails drawn flat, and without a light. The distance must depend on the state of the atmosphere, and vary with it. And no one can know or form a safe opinion as to the distance at which the schooner might have been seen, on the night of which we are speaking, unless he was at the place of collision at the time it happened, or derives his knowledge from persons who were there. And when the witnesses on board The Columbus testify that she could not be seen further off, there is no reasonable ground for doubting the truth of their testimony. It is a fact, proved by eye-witnesses, whose testimony is not impeached.

Neither can the order to stop the engine and back, instead of changing the course of the steam-ship, be regarded as a fault. It would evidently have been unwise to change her course, until the course of the approaching vessel was ascertained. She might be approaching at an angle that would clear the steamship, and a change in the course of the latter might produce a collision instead of preventing it. And stopping the engine lessened the rapidity with which the vessels were nearing each other, and gained time, while he was ascertaining the distance of the sail, and the direction in which it was steering. When he had done this, if there was sufficient distance between them to enable him to avoid her, it was unquestionably his duty to change the course of The Columbus, and allow the schooner to pass on, in the course in which she was steering. But, in his judgment, this could not be done.

The testimony shows that he was an experienced and trustworthy seaman. And there is no evidence to impeach the correctness of his opinion in this particular. And if it was impossible to avoid the schooner, by changing the course of his vessel, the order to back was evidently judicious, as it gave more space for the schooner to change her course, and thereby escape the impending danger. Her course could be changed in a much

shorter space than that required for a steam-ship of the size of The Columbus.

It is, without doubt, the general rule, that a sailing vessel should keep her course when approaching a steamboat, and it is the duty of the latter to keep out of her way. But this rule presupposes that the steamer discovered, or ought to have discovered, the sailing vessel when at a sufficient distance to avoid her, by changing her own course. But where, as in the present case, they are brought suddenly and unexpectedly close to each other, and the ordinary rules of navigation will not prevent a collision, it is the duty of each to act according to the emergency, and to take any measure that will be most likely to attain the object. Experienced seamen testify that the mode adopted on the part of The Columbus was the usual and best one; and we see no reason to doubt it. And if The Columbus had been seen from The Mission when the engine was stopped, she might, it appears, have passed her in safety. Not a moment appears to have been lost on board of the steamer, in giving or in executing the orders which the occasion called for; and we think she is not, in any degree, responsible for the disaster.

In this view of the case, it is unnecessary to inquire whether any blame can be attached to The Mission. For, whether she was or was not managed unskilfully, or negligently, The Columbus not being in fault, is not liable for any damage sustained by the schooner.

But yet it is evident that there was great negligence on her part. For it is impossible that a vessel, lighted up like the steamer, would not have been seen from the schooner before she actually came in collision, if there had been ordinary care and watchfulness on board. It may indeed have happened that Brown, who went forward as the look-out, fell overboard by some accident, without the knowledge of Burgess, before The Columbus was in sight; and so, the want of a look-out might have been occasioned by misfortune, and not by carelessness. But the conduct of the captain, in going below during his watch, and not remaining on deck to see that the seamen were at their posts and attending to their duty, was hardly consistent with good seamanship. And it is difficult to believe that the approach of the steamer could be unknown to Burgess, who was at the helm, until the actual collision, unless he was asleep at his post. The sails of his vessel might have hid the lights, but it is hardly credible that a wakeful and watchful seaman at the wheel would not have heard the noise of her machinery before he felt the collision. We do not, however, pursue this inquiry, because it is not material to the decision. And as, in the opinion of the court, no fault is imputable to The Columbus, the

decree of the circuit court must be reversed, and the libel dismissed.

### *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Pennsylvania, and was argued by counsel, On consideration whereof it is now here ordered, adjudged, and decreed by this court that the decree of the said circuit court in this cause be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said circuit court, with directions to dismiss the libel, with costs in that court.