COMMERCIAL AND SAVINGS BANK, Respondent, v.
DUITSMAN, Appellant.

(205 N. W. 379.)

(File No. 5500.   Opinion filed October 2, 1925.)

1. **Bills and Notes—Consideration—Evidence—In Action on Note Claimed by Defendant to Be Accommodation Note Without Consideration, Evidence Held Insufficient to Present Issue to Jury.**

In action on note given in part payment of another note, on which defendant was indorser, defense that indorsement was after negotiation to plaintiff bank, and hence note in suit was accommodation paper and without consideration, held not to

present jury question, in view of defendant's testimony failing
to definitely fix time of indorsement.

2.   **Trial—Evidence—Verdict—If Proof of Fact So Preponderates
that a Verdict Against it Would Be Set Aside by Court as
Contrary to Evidence, Court Must Direct, Verdict.**

If proof of fact so preponderates that verdict against it
would be set aside as contrary to evidence, then it is court's
duty to direct verdict.

Appeal from Circuit Court, Lincoln County; Hon. L. L.
Fleeger, Judge.

Action by the Commercial & Savings Bank, a corporation,
against Geelt Duitsman. From a judgment for plaintiff and an
order denying a new trial, defendant appeals. Affirmed.

*A. J. Keith* and *M. G. Luddy,* both of Sioux Falls, for Appellant.

*S. K. Grigsby* and *Davis, Lyon & Bradford,* all of Sioux
Falls, for Respondent.

(1)   To point one of the opinion, Appellant cited:   Clinkscales v. Granite Co., 38 S. D. 205.

(2)   To point two, Respondent cited:   Peet v. Dakota Fire
and Marine Insurance Co., 1 S. D. 462, 47 N. W. 432.

SHERWOOD, J.   This action was brought on two promissory notes, aggregating about $17,000, executed and delivered by
defendant, appellant here, to plaintiff, respondent here.   The answer admits the execution and delivery of the notes, but denies
they were given for a valuable consideration, and alleges that each
of said notes was executed and delivered without any consideration, and at the request of plaintiff, solely as an accommodation
note.   At the close of the trial, a verdict was directed for plaintiff.
Later a new trial was denied, and defendant has appealed from
the judgment and order denying a new trial.

There were only three assignments of error.   Appellant, summing up these assignments, states his entire contention as follows:

"The assignments of error show that there is only one point
involved in this case, namely:   Was there any evidence in the
record sufficient to entitle the defendant to have the case go to
the jury?"

This requires us to carefully examine the entire testimony.

It is .undisputed: That on September 27, 1919, one J. A. Johnson gave his unsecured promissory note to the Farmers' Savings Bank of Tea, hereinafter called Bank of Tea, for $45,901.44. This note was dated September 27, 1919, and due March 27, 1920. It is later herein referred to as Exhibit 1.

The Bank of Tea sold this note to respondent on October 7, 1919. It was entered on the deposit register of respondent bank on that date, and the Bank of Tea was on that day credited with the proceeds. The record ‘entry on respondent's deposit register of that date, so far as it is important here, read as follows:

"Date of note, 9-27-19; No. 1970; drawer or maker, J. A. Johnson; drawee or indorsers, E. J. Hoyer, Henry Bruhn, G. Duitsman; when discounted, Oct. 7-1919; when due, 3-27-20; amount, $45,901.44; when paid, 5-13-1920."

That G. Duitsman, who signed as indorser, is the same person as Geelt Duitsman, appellant here. That the Johnson note above described was reduced by some partial payments, and the balance due thereon up to March 27, 1920, was paid on May 13, 1920, by giving to respondent bank three notes of $13,884 each; one of said notes was signed by Geelt Duitsman, one by Henry Bruhn, and one by John Oppold. Each of these three notes was dated back to March 27, 1920, the date when the Johnson note became due, and the total of the three notes was about 57 cents more than the principal and interest due on the Johnson note at maturity. This 57 cents was paid by the respondent, so that the new notes could be made in even dollars. The Johnson note was then delivered to Hoyer, cashier of the Bank of Tea.

Johnson paid this note to the Bank of Tea, April 14, 1921. Appellant was a director and president of the Bank of Tea from 1912 to 1922, was present when the note was paid, and as a stockholder of the bank received his share of the benefit of such payment. Appellant's son was cashier of the Bank of Tea from March, 1921, and shortly after said date appellant took active charge of the bank, and has since been in active charge thereof. It should be observed that Wenzlaff and McEwen, former president and cashier of the bank when the Johnson note was bought, sold the respondent bank and William Hoese and Louis Jacobs became president and cashier, respectively, in November, 1919. This case was tried about December, 1922. When the Johnson

note became due, respondent notified Johnson, the maker of the note, and the Bank of Tea, and insisted on the Johnson note being taken care of. Mr. Hoyer asked respondent whether he could substitute some other notes and later did pay and take up the Johnson note with the Duitsman, Oppold, and Bruhn notes, before described. It should further be observed that the names of the board of directors of the Bank of Tea appeared as indorsers on the Johnson note in the respondent bank. The Johnson note was in respondent's bank indorsed by Duitsman, Hoyer, and Bruhn when Hoese became president and Jacobs cashier in November, 1921.

There was some conflict in the testimony relative to whether the notes given by Duitsman and Bruhn for $13,884 each were signed at the bank, or were signed at the residence of Duitsman. But we deem this entirely immaterial, because the question here is not where the three notes were signed, but when Duitsman indorsd the Johnson note. It is undisputed that the three notes given by Duitsman, Oppold, and Bruhn aggregated $41,652, and were given to take up and actually did take up the $41,652 Johnson note. It will be seen that the real question here is, Was Duitsman's name on the Johnson note as an indorser when it was discounted by respondent bank? Upon this question Hazel Roberts testified as follows:

"During September and October, 1919, I was teller and assistant cashier of Commercial & Savings Bank. I registered all notes received by the bank while I was there. The book you show me is the discount register of plaintiff bank. I kept it. This entry is in my handwriting. I made the entry from this note— the Johnson note. I used the note to make the entry. It correctly shows the signatures, indorsements, etc., on the note at the time it was received by me. From an examination of the register, I can tell that the entry was made October 7, 1919; that was the date this note was received by the bank. The indorsements, 'E. J. Hoyer,' 'Henry Bruhn,' and 'G. Duitsman,' were on this note when I received it and made the entries in the discount register. I would say it was all made at the same time; otherwise I would not have put those indorsers on there. This note was paid and taken out of the bank May 13, 1920.'

On cross-examination:

"The fact this note was indorsed without recourse I did not note at all upon the register. I might have overlooked it. I cannot tell at this time why it was left off. I was instructed to put all indorsements that showed on the note. I have no personal recollection of this transaction, except as I am able to show it from the books."

Recross:

"My testimony is that the entry was all made at the date shown.

"Q. If, two weeks after this you received the note, and that time there were indorsements on it, would you go back and fill in the blank space? A. If I had received it a second time.

"Q. And you have no personal recollection, have you, that you did not receive it a second time? A. That didn't go through my hands a second time.

"Q. Whose hands would it go through the second time? A. I registered it the first time, and if it had been taken out it would have been paid, and when it was brought back it would have been given a second number.

"In answer to Mr. Bradford's question I said that the entry was all made at the same time, otherwise I would not have put the indorsers on there, and therefore I now know that the entry was all made at the same time. The only foundation that I have for thinking that the entry was all made at the same time is because of the fact that there appears under the heading of 'Indorsers' the three names; and, if they were not all there at the time I first entered it ,I would of course leave a blank space there, the same as I did on other notes which appear on the same page. If the indorsements, 'E. J. Hoyer,' 'Henry Bruhn,' and 'G. Duitsman' were not on the note when it came in and when I entered it on the discount register, I would have left a blank space, just as I did in the entry below it."

Ethel Bahn, a witness for plaintiff, testified:

"During the month of October, 1919, I lived at Sioux Falls and was bookkeeper for the Commercial & Savings Bank, and I prepared Exhibit E, which is a copy of the deposit ledger of the Commercial & Savings Bank, showing a portion of the account of the Farmers' Savings Bank of Tea. The entry on the first line

of Exhibit E was made by me, and it shows the correct date with reference to a deposit made by the Bank of Tea, and was made at the date which it bears. The record shows that a deposit was made by the Bank of Tea in the amount of $124,541.17, which deposit was made October 7, 1919, and the record further shows that on that date $70,000 was checked out."

The only material testimony which it is claimed raises an issue here was given by appellant, Duitsman, and relates to the time when he indorsed the Johnson note. He testified as follows:

"The approximate date when I first saw the $45,000 J. A. Johnson note was in the middle of October, 1919, or shortely thereafter. It was at Farmers' Savings Bank at Tea, and was shown me by Hoyer. At the time it was first shown me, there was indorsed on the back, 'Without recourse, Farmers' Savings ank of Tea, South Dakota, by E. J. Hoyer, Cashier,' and there was also upon the back the indorsement 'of E. J. Hoyer and Henry Bruhn.'

"The approximate date that I indorsed the note by signing 'G. Duitsman' on the back was the middle of October or shortly thereafter. I signed at the request of Hoyer, and did not receive any consideration or anything in consideration for my signature on the back of the note. I never authorized Hoyer to act as my agent in any manner in procuring any papers which might be at the Commercial & Savings Bank at Sioux Falls, never authorized Hoyer to act as my agent in any capacity in bringing from the Commercial & Savings Bank of Sioux Falls to me any papers, prior to the time I was in the Bank at Tea on the day when I indorsed my name on the back of the Johnson note."

"Q. Have you any way of fixing the date when you put your signature on the back of Exhibit 1? A. Well, when I looked at the note for the simple reason that it was some time after this note was drawn up.

"Q. Have you any way of fixing it by any entries and notation to which your attention was directed by Mr. Hoyer? A. No; not definitely.

"Q. By definitely, you mean that you cannot fix the precise time? A. Yes.

"Q. Are you able, however, to fix it within a few days of the exact date? A. Yes; I think so.- I don't know, of my own knowl-

edge, that this note had been in the hands of the Commercial & Savings Bank before I signed it."

This court said, in Clinkscales v. Granite Co., 38 S. D. 205, 160 N. W. 843.

"The rule has been long settled in this state, in accordance with that existing in many other states, that, on a motion for a directed verdict by either plaintiff or defendant, the trial court and this court will assume that the evidence of the party against whom a verdict is demanded is undisputed, and will also give such evidence that construction which is most favorable to such party. Thus on a motion of the defendant for a directed verdict the court will assume the evidence of the plaintiff to be undisputed, and give it the most favorable construction for the plaintiff that it will properly bear, and give the plaintiff the benefit of all reasonable inferences arising therefrom."

[1] Citing this rule, appellant contends that his testimony given above presented an issue of fact which should have been submitted to a jury. If we assume the rule in the Clinkscales Case applies to this case, and take appellant's entire testimony and consider it to be true, we find he says in substance:

"I don't know that the Johnson note was sold or delivered to the respondent before I signed it. I have no way of definitely fixing the date on which I indorsed the note from any entries, notations, or anything else to which my attention has been called. When I look at the note, I reason I indorsed it some time after it was drawn up. I approximate the date I indorsed the note as the middle of October or shortly thereafter. I can't fix the time I indorsed it definitely, but think I can fix it within a few days."

Surely nothing in this testimony denies that appellant's name was on this note when respondent bought it. It clearly establishes the fact that appellant does not know whether he signed the note before or after respondent bought it, and that there is no note or memorandum from which he can now, 3 years after he indorsed the note, refresh his memory as to the date of his indorsement. In fact appellant has nowhere in his testimony specifically denied that he indorsed this note before the Bank of Tea sold it to respondent. We can see no inference which could fairly be drawn from this evidence sufficiently favorable to plaintiff to raise an issue in this case.

[2]   We think the better rule to be applied to cases of this kind, was well set forth in Peet v. Dakota Fire & Marine Insurance Co., 1 S. D. 462, 47 N. W. 532, as follows:

"In a jury case ,the direction of a verdict is only justified when the evidence conclusively establishes the right of the party in whose favor the direction is given. ' The test of the right to direct a verdict is whether the court would be bound to set a verdict aside as against the evidence, if rendered against the party in whose favor it was directed. If this would be the duty of the court, the judge need not await the verdict before acting, but in advance may rule the question as one of law. But as verdicts cannot be found on mere conjecture, neither will a shadow or possibility, nor a mere scintilla, stand in the way of ruling the case in favor of the party who shows a substantial right, of which there is no substantial contradiction. If the proof of a fact is so preponderating that a verdict against it would be set aside by the court as contrary to evidence, then it is the duty of the court to direct a verdict."

See Drew v. Lawrence, 37 S. D. 620, 159 N. W. 274.

Applying that rule to this case, and finding no error in the record, the judgment and order of the lower court denying a new trial are affirmed.

DILLON, J., not sitting.

Note.—Reported in 205 N. W. 379. See, Headnote (1), American Key-Numbered Digest, Bills and Notes, Key-No. 537(3), 8 C. J. Sec. 1378; (2) Trial, Key-No. 139(1), 38 Cyc. 1571.