THE FEDERAL LAND BANK OF OMAHA, Appellant, v. HOUCK, Respondent

(4 N. W.2d 213.)

(File No. 8477. Opinion filed May 27, 1942.)

450

452

**Otto A. Gruhn,** of Omaha, Neb., and **W. J. Jacobs,** of Faulkton, for Appellant.

**K. J. Morgan,** of Gettysburg, for Respondent.

SMITH, J. This action was instituted by the Federal Land Bank of Omaha to recover a deficiency judgment against defendant Houck upon a mortgage indebtedness of one Scott. The complaint alleged that defendant had assumed and agreed to pay the Scott indebtedness. The answer pleads fraud. The case was tried to a jury and resulted in a verdict for defendant. The appeal is from the judgment. The Federal Land Bank, hereinafter referred to as the Bank, moved for a directed verdict at the close of the testimony and predicates error upon the ruling of the trial court upon that motion.

The right to a review of the evidence under an appeal from a judgment predicated upon the ruling of the trial court upon a motion for directed verdict has long been recognized by our adjudications, Lyle v. Barnes, 30 S.D. 647, 139 N. W. 338; Warwick v. Bliss, 45 S. D. 388, 187 N. W. 715; Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181, and is preserved by SDC 33.0710. See Chambers v. Wilson et al., 67 S. D. 495, 294 N. W. 180. The review in such case is limited by the scope of the motion. Grant v. Powers Dry Goods Co., 23 S. D. 195, 121 N. W. 95; Dilger v. Griffith, 26 S. D. 411, 128 N. W. 487; Woods et al. v. Stacy, 28 S. D. 214, 132 N. W. 1007. True principles of law, rather than the law of the case as subsequently established by instructions to the jury, govern the trial court in ruling on the motion for a directed verdict and this court in reviewing such a ruling. Schmidt v. Carpenter, 27 S. D. 412, 131 N. W. 723, Ann. Cas. 1913D, 296; 64 C. J. 442. A verdict by direction is only justified when the evidence conclusively establishes the right of the moving party. Commercial & Savings Bank v. Duitsman, 48 S. D. 534, 205 N. W. 379.

The first phase of the argument of the Bank deals with the issue of fraud. The facts involved are as follows: In 1924 Perry M. Scott and his wife executed and delivered to the Bank their promissory note and a real estate mortgage as security for the payment thereof. This farm loan was negotiated through the Gettysburg National Farm Loan Association of Gettysburg, South Dakota, and the note was endorsed by that Association. In connection with the transaction Scott became the owner of twenty-eight shares of the capital stock in that Association. On December 6, 1930, the Scotts conveyed the real property so mortgaged to the defendant Houck "subject to Federal Loans and other incumbrances of record." On May 23, 1931, Houck wrote the Bank "I have taken over the Perry Scott farm and from now on address all correspondence in reference to your loan to me." On May 26, 1931, the Bank wrote Houck and in substance told him that if he had taken over the Scott land to please go to the Secretary of the Gettysburg Farm Loan Association and sign a Change of Title Notice, and that thereafter all correspondence connected with the loan would be mailed to him. On June 4, 1931, the Bank wrote the Secretary of the Loan Association as follows:

" 'This land has been taken over by Mr. Houck.'

"This is to request that you communicate with these parties, securing information necessary to complete the association's records in connection with this transfer, and at the same time have a Notice of Change of Title duly executed and forwarded to this Bank for its records.

"Your prompt compliance with this request will be sincerely appreciated."

On May 10, 1932, Mr. Houck called at the Association's office, and the Secretary there tendered to him a document for his signature. Houck's testimony as to the conversation there had was not disputed by the Secretary who was a witness for the Bank at the trial. Houck testified, "I told him that I didn't have any glasses and I could not see to read it and asked him if there was anything in there that would bind me, and he said it was just a matter of record for the

Federal Land Bank, showing that the land changed hands, for their records." Thereupon Houck signed an instrument entitled "Notice of Change of Title" which contained the following language: "In consideration of The Federal Land Bank of Omaha, of Omaha, Nebraska, permitting the undersigned to assume said mortgage and the stock interests of the vendor as provided by paragraph 6 of Section 12 of the Federal Farm Loan Act, 12 U.S.C.A. § 771, subd. 6, and in further consideration of the Gettysburg National Farm Loan Association admitting the undersigned to membership in such Association, the undersigned purchaser hereby assumes all the conditions of and agrees to pay the unpaid balance of the mortgage indebtedness to The Federal Land Bank of Omaha upon said premises, * * *."

The evidence reveals that Houck was a man of broad experience in real estate and mortgage transactions, that the Secretary of the local Association was a practicing lawyer, that such lawyer had acted as attorney for him in many matters and had prepared the contract pursuant to which the Scott land was conveyed to Houck, containing a provision that the conveyance was to be "subject to" the mortgage of the Federal Land Bank.

The next day after this instrument was signed by Mr. Houck, at the solicitation of the Secretary Mr. Scott executed that section of the agreement which contained an assignment to Mr. Houck of his twenty-eight shares of capital stock in the Association. The instrument so executed was left with the Secretary of the Association and was thereafter mailed to the Bank. On Nov. 25, 1932, the Bank wrote the Secretary acknowledging receipt of the Notice of Change of Title and said "for which we thank you." Thereafter the Bank noted Houck on its records as a borrower and notified him of maturities. Not until April, 1937, was Houck elected to membership in the Association, nor did he know that he had signed an offer to assume the mortgage indebtedness until October or November, 1940.

In urging that the Circuit Court erred in refusing to direct a verdict on the issue of fraud, the Bank first states

that the evidence establishes that Houck was neither prevented from reading the instrument entitled "Notice of Change of Title" or from having it read to him, and that he was negligent as a matter of law in failing to ascertain its contents, and further states that one of Houck's capacity, understanding and experience may not avail himself of the defense of fraud grounded on a misrepresentation of the contents of an instrument which he negligently fails to read. This contention rests largely on the language used by this Court in Farlow v. Chambers, 21 S. D. 128, 110 N. W. 94, and finds support in the holdings of other jurisdictions, 34 Mich. Law Rev. 705; Bixler v. Wright, 116 Me. 133, 100 A. 467, L. R. A. 1917F, 637. However, in Herreid et ux. v. Chicago, M. & St. P. Railway Co., 38 S. D. 68, 159 N. W. 1064, the question under consideration by this Court was whether a complaint stated a good cause of action which alleged that plaintiff signed a deed without reading it, based upon the representation of the agent of the Railway Company that it "was merely a conveyance of the said right of way and would not bar or preclude plaintiffs from recovering such damages as they might suffer by any injury to or destruction of the spring", whereas the instrument in fact contained a release of all liability for damages of the described character. In sustaining the complaint this Court receded from the implications of the opinion in Farlow v. Chambers, supra, and without mention of Winter et al. v. Johnson, 27 S. D. 512, 131 N. W. 1020, permitted plaintiff to assert defendant's fraud as a defense to the purported release notwithstanding the fact that the allegations of the complaint revealed that the plaintiff had negligently failed to read the instrument he signed.

The courts which bind a party to a contract which he has negligently failed to read, even though his signature thereto has been procured by deliberate misrepresentation as to its contents, justify their position by holding that the judicial machinery has been developed for the use of those persons who use due diligence to look out for their rights outside of court. 34 Mich. Law Rev. at 708. As between the alternatives of lending use of the courts as a shield to

the careless victim or as an instrument to aid the perpetrator of fraud in gathering the fruits of his perfidy, we have little difficulty in making a choice. Where the issue is between the original parties we think neither reason nor policy justifies the reception of a showing of negligence on the part of him who is overreached as a countervailent or neutralizer of fraud. We therefore adhere to the views expressed in Herreid et ux. v. Chicago, M. & St. P. Railway Co., supra.

██ In presenting this branch of the case counsel for the Bank asserted at bar that the evidence does not support an inference that the Secretary of the Association acted as the agent of the Bank in this transaction. It has been held that the Federal Farm Loan Act, 12 U.S.C.A. § 641 et seq., Chapter 7, Subchapter 1, does not create the relation of principal and agent between a Federal Land Bank on one hand and a National Farm Loan Association or the Secretary of that Association, on the other. Bjorkstam et ux. v. Federal Land Bank of Spokane et al., 138 Wash. 456, 244 P. 981; Federal Land Bank of Wichita, Kansas v. Denson et ux., 172 Okl. 225, 44 P.2d 891; Gantt v. Gunter et al., 225 Ala. 679, 145 So. 146; Hooper v. Federal Land Bank of Columbia et al., 178 Ga. 571, 173 S. E. 415. It does not follow, however, that such a Bank is without power to use the Secretary of such an Association as its agent in a particular transaction. We deem the evidence as herein set forth sufficient to support an inference that the Federal Land Bank of Omaha constituted the Secretary of the Gettysburg Farm Loan Association its agent for the purpose of securing the signature of defendant Houck to the questioned instrument.

██ The Bank next asserts that the evidence will not support an inference of fraudulent intent. When the evidence is viewed in the light most favorable to Houck, the inference of such an intent is warranted. A reasonable mind acting reasonably, Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 72 A. L. R. 7, would be justified in viewing the conduct of the Bank as all of a piece. It might conclude that the Bank was motivated by a desire to generally improve its position by securing agreements from purchas-

ers from its mortgagors to assume and agree to pay those respective mortgages, and that the purpose to secure such an agreement from Houck originated with the Bank. In response to the request of Houck that future correspondence be addressed to him, it did not tell him that his request would be granted if he assumed liability for the debt. Instead it responded "Sign a change of title notice, then all correspondence connected with this loan will be mailed to you." The Bank had had printed an instrument innocently entitled "Notice of Change of Title" in bold face type. In the smaller type of the body of that instrument there lurked the desired offer to assume. When one of these printed forms had been completed and was presented to Houck for signature the Bank received notice that he did not intend to enter into any character of jural relation with it. This he did by asking if the instrument contained anything which would bind him. In response to that question he was advised that "it was nothing but a notice." The agent of the Bank who procured Houck's signature was a witness at the trial and neither disputed nor explained this false representation. Notwithstanding its knowledge of the circumstances of its procurement, the Bank came to court and claimed advantage of the terms of the instrument as an express contract. A fraudulent intent may be gathered from circumstances which are sufficient to overcome the presumption of honesty and fair dealing which supports business transactions. Guaranty State Bank of Osceola v. Potter et al., 49 S. D. 619, 208 N. W. 170.

In this discussion the Bank treats the alleged contract as partially executed and notes that the defendant has not rescinded nor has he asked for rescission on the ground of fraud. As we have indicated, the defendant has pleaded fraud as a defense and treats the contract as void as distinguished from voidable. Even under the objective theory of mutual assent which views a contract as the product of manifested mutual assent rather than of actual or subjective mutual assent, fraud may render void that which has the appearance of a contract. Williston on Contracts, Rev. Ed., §§ 20 and 95a; Restatement of the Law of Contracts, § 475;

460

12 Am. Jur. 638; and see Vol. IX Wigmore on Evidence, 3d Ed., § 2416.

■■ The instrument we are considering was in terms an offer to contract. The warranted inference of fraud relates to the factum rather than to some external matter of inducement. A finding that Houck did not intend to enter contractual relations with the Bank, that the Secretary knew he intended only to sign a Notice of Change of Title and did not intend to manifest any character of obligatory assent, finds support in the evidence, and if found compels a conclusion that the contractual knot was never tied. The case is not distinguishable in point of fact or principle from one in which the fraud is perpetrated by substitution of a contract for an intended instrument of a wholly different character. In neither instance does a contract result, because of utter lack of mutual consent. SDC 10.0102. In such a case there is no intention to do the act or say the words which manifest a volition to assent.

■■ The Bank invokes the doctrine of equitable estoppel by acceptance of the benefits. It says Houck is estopped to assert the defense of fraud. To this contention Houck answers that a knowledge of the facts by the person to be estopped is essential to the application of this doctrine, that he was without such knowledge until the fall of 1940, and that no benefits have accrued to him since that time. This answer finds support in the facts and the authorities.

■■■■ The basis of the doctrine is stated in 31 C. J. S., Estoppel, § 107, at page 341 as follows: "The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits, and the principle precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit."

And dealing with the application of this principle to a case in which the asserted estoppel is founded on the accep-

tance of benefits it is said on page 349 of 31 C. J. S., Estoppel, § 109:

"In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted with knowledge of the facts and of his rights, * * *.

"In addition, it is essential to constitute an estoppel in this class of cases * * * that the transaction and the acceptance of benefits be inconsistent with the claim subsequently asserted, and that its benefit be voluntarily received. * * *

"The rule must be given a reasonable interpretation, and must be applied in a manner to do equity."

The argument of the Bank is predicated upon facts showing that during the period from 1932 until this action was commenced the mortgage was kept in force for the benefit of Houck; that during 1934 (which was before he was elected to a membership in the Association) he received and retained a five dollar dividend on the Scott stock; that in 1937 he was elected to membership in the Association and was thereafter named, and in one instance acted as, a member of the loan committee of that Association and that he received and retained a two dollar fee as such appraiser or committeeman.

That Houck had no knowledge of the underlying facts is established. Counsel for the Bank interrogated Houck on cross examination and brought out the fact that he had no knowledge of the contents of Exhibit C (the Notice of Change of Title) or of the fact that he had signed an agreement to assume the Scott indebtedness until he was told of that fact by a representative of the Bank during the fall of 1940. That testimony is without express or substantial circumstantial dispute in the evidence. Further viewing the facts in their most favorable aspect to Houck we perceive nothing in the over-all situation which would affront one possessed of the most squeamish conscience in pleading the defense of fraud. It is not as if Houck had learned of his purported contract and had asserted rights

under it. The evidence will sustain the inference that he at no time asserted a right, and that he never claimed the Bank to be obligated to maintain the loan for his benefit. In paying maturing installments he did that which any non-assuming purchaser of the mortgaged property might do to protect his equity. There was nothing about the fact that the Bank seemed more than willing to take his money to place him on notice or to excite him to inquiry. The finding is not required that he knew of his election to membership in the local Association until after this action was started. He had bought and paid for the property interest of Scott in the stock of the local Association. The Association tendered him a five dollar dividend on that stock without electing him to membership, and he received and retained it. It later requested his service as an appraiser on its loan committee and paid him two dollars for that service. Those which are now represented by the Bank as benefits which accrued under the alleged contract appeared to Houck as having accrued to him through the outlay of his funds and energies rather than as a return for the alleged promise.

 Nothing less than unconscionable weight should lift the bar of an estoppel against a defense of fraud. Otherwise that which is intended as an instrument of equity and justice might become a shield to the perpetrator of fraud. In our opinion the circumstances revealed by this record do not support the contention of the Bank, and the Court did not err in refusing to raise an estoppel, or in failing to direct a verdict on the issue of fraud.

Thus far we have been dealing with the alleged express agreement. If we understand its discussion, the Bank finally contends that the pleadings embraced the issue of an implied agreement. It is said in substance that by their conduct the parties have manifested mutual assent to an agreement by which the Bank was bound on the one hand to maintain the loan in force for the benefit of Houck and he, on the other hand, was bound to pay the mortgage debt.

 It is elementary that conduct may be as effective as words in manifesting mutual assent to a contract.

Such agreements are said to be implied in fact. Williston on Contracts, supra, § 3. As in the case of express contracts, the facts are viewed objectively, and if a party voluntarily indulges in conduct reasonably indicating assent he may be bound even though his conduct does not truly express the state of his mind. "The only intent of the parties to a contract which is essential is an intent to say the words and do the acts which constitute their manifestations of assent." Williston on Contracts, supra, § 21. However, as between the parties, in determining whether exhibited conduct of the one manifests a volition to assent to the agreement, all of the circumstances known to the other party must be considered in determining whether his purported reliance on such conduct as a manifestation of assent was justified. "* * * In bilateral acts the just reliance of the other party to the transaction upon the first party's outward expression must be the salient consideration." Wigmore on Evidence, supra, § 2404.

 Looking at the evidence as a whole and to the circumstances surrounding particular transactions, in the light of the applicable provisions of the Federal statutes (See Federal Land Bank of Columbia v. Shingler et al., 43 Ga. App. 92, 157 S. E. 911; Scott et al. v. Federal Land Bank of Louisville, Ky., 92 Ind. App. 249, 175 N. E. 16) we have concluded that it fails to reveal circumstances requiring an inference that Houck indulged in conduct upon which the Bank could justly rely and on which it did rely as manifesting an assent to the alleged agreement. We do not extend this opinion so as to include a discussion of all of the facts or all of the contentions advanced. We content ourselves with dealing with those matters most earnestly pressed.

 Reasoning from language of the Federal Farm Loan Act, supra, 12 U.S.C.A. § 771, wherein it provides, "In case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and the stock interests of the vendor to be assumed by the purchaser" the Bank in substance says: That Houck was presumed to know the law; that under a sound interpretation of this statutory language the Bank was without power to obligate itself to

maintain a loan in force for the benefit of a purchaser unless such purchaser assumed and agreed to pay the mortgage debt; and therefore Houck must be presumed to have manifested an intention to assume the debt when he sought an agreement from the Bank to continue the loan in force for his benefit. Of this method of reasoning it has been said "To assume, first, that everybody knows the law, and, second, that everybody thereupon makes his contract with reference to it and adopts its provisions as terms of the agreement, is indeed to pile a fiction upon a fiction, and certainly without any necessity, for where different conclusions are reached by means of the fiction than would be reached without it, they are not preferable to the opposite ones." Williston on Contracts, supra, § 615. The author was there treating with the interpretation of contracts, but we think the criticism equally applicable to the use of that method in determining whether parties have reached an agreement. Further, the argument is premised upon an assumption which the evidence does not conclusively establish, namely, that Houck sought an agreement from the Bank to maintain the loan in force. Triers of the fact could, we think, reasonably believe that Houck sought no more than his words imported, namely, that the Bank address correspondence to him so that having notice of the attitude of the Bank he could take steps to protect his interests. The fact that thereafter as he received notice he paid installments as they accrued, in our opinion does not conclusively establish that he sought either to bind the Bank or himself. Because conduct of a purchaser of a mortgaged property in making payments on the mortgage debt is consistent with an intent to but protect his property interest, such conduct does not necessarily manifest a volition to assume that debt. 37 Am. Jur. 333. That to further its interests the Bank had power under the cited statutes to receive payments from Houck on the Scott indebtedness, even though he refused to assume that debt and it in turn refused to agree to continue the mortgage in effect in accordance with its original terms, we do not doubt. Such being the case, we are unable to arrive at the conclusion that because Houck requested notice of

maturities and on receiving such notice made payments he thereby indulged in conduct upon which the Bank could justly and reasonably rely as a clear manifestation of a volition to assume the mortgage debt. And certainly there was less reason for the Bank so interpreting Houck's conduct because he told its agent that he did not intend to bind himself.

■■■ By the same process of reasoning it is said that § 733 of the Federal Farm Loan Act provides that "No persons but borrowers on farm land mortgages shall be members or shareholders of national farm loan associations"; that Houck was presumed to know the law; and that by accepting membership in the Gettysburg National Farm Loan Association he must be presumed to have intended to become a borrower by assuming the Scott debt. It is not conclusively established by the evidence that Houck knew that he had been elected to membership in the Association until this action was commenced, and it is therefore somewhat difficult to interpret his subsequent conduct as a voluntary acceptance of membership. However, accepting the Bank's premise, we do not believe that such conduct should be held to conclusively indicate an intention to assume the mortgage in question. So to hold would transmute that which was obviously intended only as a rule of eligibility to membership into something closely akin to a stockholder's liability. We do not think this statute may be soundly interpreted as imposing liability for mortgage debt upon every purchaser of land mortgaged to a Federal Land Bank who accepts a purported membership in the Farm Loan Association through which the loan was made.

Further, the events which led up to Houck's election to membership in the Gettysburg Farm Loan. Association should not be overlooked in determining whether the Bank could justly rely on his subsequent acts as a manifestation of assent to bind himself to it. Early in 1937 he was appointed as an alternate on the Association's Loan Committee, and notice of that action of the Association was given to the Bank by the Secretary. The Bank replied that Houck was not qualified to serve because not a member. The Secre-

tary's response was that he would call the matter to the attention of the Board, and he had no doubt but that they would elect Houck to full membership. Thereafter, to serve the purpose of the Association, and without any knowledge or solicitation on his part, Houck was ushered into membership. Surely it can not be said that the only conclusion to which reasonable minds could arrive, from these circumstances, would be that Houck thereby manifested an intent to assume the Scott debt.

We are firm in our conviction that the evidence as a whole is insufficient to support the view that it conclusively establishes the asserted implied agreement.

██ A further piece of evidence is presented by the Bank as though it should be assigned conclusive effect in determining whether the evidence establishes either an express or an implied contract. In 1934 Mr. Houck made application to the Gettysburg National Farm Loan Association for a loan on other farm lands. In the course of those negotiations he signed an application for the loan, in a section of which, under a head reading "The following are all the loans for which I am liable to Federal and Joint Stock Land Banks and Land Bank Commissioner" the Scott loan was described. The Bank of course points to this recital in this instrument as an admission of a contractual liability. The Secretary of the Association testified that he made up this application from information elicited from Houck by questions. Houck could not remember whether questions were asked. He said he signed the instrument without reading, and this last statement is not disputed. Further, the Secretary does not purport to detail the questions and answers which prompted him to state the matter as he did in the application. Thus the value of this instrument as evidence of an admission is lessened by the circumstances of its making. In view of that fact, and that other substantial evidence supports the claim of Houck that he in fact never became bound to the Bank, we are of the opinion that this exhibit was without conclusive effect and was but part of the whole evidence to be considered by a jury in resolving the conflicts in the record. 31 C. J. S., Evidence, § 379, 1164.

It is perhaps unnecessary to observe that which is obviously true, namely, that if no contract existed, one would not be created by an erroneous admission.

In our opinion the Court did not err to the prejudice of the Bank in submitting the issue to the jury, and the judgment is therefore affirmed.

RUDOLPH, P.J., and POLLEY and WARREN, JJ., concur.

ROBERTS, J., not sitting.