HOYT v. CLANCEY.
No. 14006.

United States Court of Appeals
Eighth Circuit.
Feb. 16, 1950.
Rehearing Denied March 7, 1950.

George J. Danforth, Sioux Falls, S.D., (T. R. Johnson, C. J. Delbridge and G. J. Danforth, Jr., Sioux Falls, S.D., on the brief) for appellant.

Frank Biegelmeier, Yankton, S.D., (Holton Davenport, Sioux Falls, S.D., on the brief) for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment of dismissal of an action brought to recover damages for fraud and deceit. Jurisdiction is based on diversity of citizenship. The plaintiff (appellant) is the sole legatee of her deceased husband, Howard B. Clancey, and the special administratrix of his estate. The defendant (appellee) is the brother of her deceased husband. Briefly stated, the plaintiff's claim is, in substance: (1) that in the spring of 1942, while her husband was dying of cancer in a hospital in Chicago, the defendant falsely and maliciously represented to him that a deed from their father, Charles F. Clancey, Sr., to the defendant and plaintiff's husband of a 400-acre farm in Jones County, South Dakota, was a joint tenancy deed, that her husband's interest would terminate at his death, and that in order to protect his wife (the plaintiff) it would be necessary to reconvey the farm to the father, who would then execute a deed under which she would succeed to her husband's half interest upon his death; and (2) that she and her husband, relying upon these representations, joined with the defendant and his wife in a deed reconveying the farm to Charles F. Clancey, Sr., who shortly thereafter deeded the farm to the defendant and his wife, as joint tenants; and that the defendant ultimately sold it for $10,000. The plaintiff prayed for $5,000 actual and $2,500 punitive damages.

The defendant denied that Howard B. Clancey had any interest in the farm, and denied that he was induced by fraud to execute the deed reconveying his interest, if any, in the farm to his father.

Without objection by the defendant, the case was tried to a jury. At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The court granted the motion upon the ground that Howard B. Clancey had "no present interest" in the farm at the time he and the plaintiff executed the deed reconveying his interest in the farm to Charles F. Clancey, Sr., and that, for that reason, the plaintiff's husband could not have been defrauded.

The plaintiff contends that, under the evidence adduced by her, the questions whether her deceased husband owned an un-

divided half interest in the farm at the time he executed the deed to his father and whether the defendant fraudulently induced him to part with his interest, were questions of fact for the jury, and that the court, therefore, erred in directing a verdict for the defendant. The plaintiff also contends that certain rulings of the court upon evidence were erroneous and prejudicial.

The defendant asserts: (1) that the plaintiff's claim was equitable, that she was not entitled to a jury trial, and that she cannot complain because the court, instead of the jury, decided issues of fact; (2) that, in any event, the plaintiff's evidence would not have sustained a finding that her husband had any interest in the farm; (3) that there was a total failure of proof as to her fraud allegation; and (4) that the court did not err in its rulings on evidence.

Many of the facts which gave rise to this controversy are not in dispute. The defendant and Howard B. Clancey were the only sons of Charles F. Clancey, Sr., of Sioux Falls, South Dakota, who, prior to February 19, 1942, was the owner of the farm in suit. On that day, he and his wife executed and acknowledged a deed of the farm, in which their two sons were named as grantees, but not as joint tenants. This deed was turned over to the defendant, who caused it to be recorded in the office of the Register of Deeds of Jones County, South Dakota, on March 16, 1942. It was apparently understood that the father was to retain the income and control of the farm.

By deed dated June 15, 1942, which the defendant had caused to be prepared, the two sons of Charles F. Clancey, Sr., and their respective wives, reconveyed the farm to him. The defendant and his wife acknowledged this deed on June 15, 1942, and Howard B. Clancey and the plaintiff acknowledged it on June 18, 1942. The deed was recorded on September 5, 1942.

On October 15, 1942, Charles F. Clancey, Sr., and wife executed a deed of the farm to the defendant and Viola W. Clancey, his wife, as joint tenants. This deed was recorded on December 11, 1942. On July 17, 1946, the defendant and his wife sold the farm for $10,000, the net proceeds amounting to about $9450. Charles F. Clancey, Sr. died in January, 1947.

Howard B. Clancey, who, prior to his last illness, was engaged in the practice of dentistry in Chicago, died on July 8, 1942, at a hospital in that city. He was 33 years of age and had been afflicted with cancer since 1940. He was in the hospital from May 26, 1942, until the time of his death, in a weak and emaciated condition and more or less under the influence of morphine administered to relieve pain. He had married the plaintiff in Chicago on March 16, 1935, and they had lived there after their marriage. They had known each other as high school students in Sioux Falls, South Dakota, where the parents of both lived. The plaintiff and her husband were childless, but had signed pre-adoption papers for a baby girl, who was living in their home the spring of 1942 and is now the adopted daughter of the plaintiff.

Aside from the court's challenged rulings on evidence, the only ruling which the court made affecting the merits of the case was that it conclusively appeared from the plaintiff's evidence that the deed of February 19, 1942, from Charles F. Clancey, Sr., to his two sons conveyed to them no present interest in the farm, but was testamentary in character. We are not required on this appeal to decide questions of law which were not considered by or ruled upon by the District Court. Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F.2d 976, 981; Montgomery Ward & Co., Inc. v. Langer, 8 Cir., 168 F.2d 182, 185; Woods v. Hillcrest Terrace Corporation, 8 Cir., 170 F.2d 980, 983.

In determining whether the court was justified in directing a verdict for the defendant, we must assume as established all of the facts that the evidence supporting the plaintiff's claim reasonably tended to prove, and to give to her the benefit of all favorable inferences fairly deducible from such facts, as well as of the rule that issues which depend upon the credibility of witnesses and the weight of evidence are for the jury. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct.

272, 78 L.Ed. 492; Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441, 442; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439.

■■ At the trial the plaintiff called the defendant as an adverse witness for cross-examination. Relative to the deed of February 19, 1942, from his father to Howard B. Clancey and himself, the defendant testified that he had the deed; that he first saw it in March, 1942, when his father gave it to him with a dollar and requested him to have it recorded at Murdo, South Dakota; that the deed was recorded and returned to the defendant at Sioux Falls; that he then returned the deed to his father "as per his instructions"; that he was not with his father and mother when the deed was executed; that he did not think his brother Howard was there at the time, and, so far as the defendant knew, his brother had never seen the deed. Over the objection of the plaintiff, the defendant, on redirect examination, testified as follows: "Dad said to Howard and myself then [in February 1942] that he was going to have a deed made of this Draper property [the farm in suit] in our names. * * * That it would be ours in name only because they intended to manage it, intended to have the income from it and they intended to do with it whatever they might want to. Under those conditions it was to be ours, in our names. Any time Dad wanted to change that for any reason he would have a perfect right to do so. That is the way it stood."

While this testimony of the defendant as to the purpose of the delivery to him of the deed, as to its return to his father, and as to what the father said to his sons with respect to his intention in conveying the farm to them, was uncontradicted and apparently uncontradictable, since the father and Howard were both dead, the defendant's credibility and the weight of his evidence were for the jury and not for the court. The jury would not have been compelled to believe that the deed was delivered to the defendant for the sole purpose of having it recorded, or that he returned the deed to his father, or that the father's conversation with his sons was as the defendant stated, or that any such conversation ever took place. See and compare, Rasmussen v. Gresly, 8 Cir., 77 F.2d 252, 254; Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 324, 111 A.L.R. 736; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440-444. It seems apparent that the District Court, in directing a verdict for the defendant, at the close of the plaintiff's evidence, disregarded the rule that issues which depend upon the credibility of witnesses and the weight of evidence are for the jury. The court said:

"* * * The deed was made to those two boys. It was subsequently delivered to the defendant in the action for the purpose of having it recorded. It was recorded and according to the undisputed evidence it was returned to the grantor. The grantor retained possession of the property and absolute control over the property and the instrument of conveyance after it was recorded, so I don't regard that as of any material consequence. That is, the fact he had the instrument recorded. There is no evidence to contradict the statements of the defendant in regard to that, or the undisputed fact that he did retain possession and control of the property. I am confident that under the evidence, as I say, viewed in the most favorable light to the plaintiff, that even if this deed had been delivered, that is, the delivery had been sufficient upon which to predicate a transfer of a present interest in the property, that it would have amounted to nothing more or less than a provision in a will, other than there might be a question that it could be revoked. The only conclusion that I am able to arrive at from the evidence is that the deed was executed by the elder Mr. Clancey so that he would have the use and control of the property and the proceeds of the property and control of it, and in event that he died, without any testamentary disposition or any further conveyance, that the property would go to these two boys without the expense of probate.

"Now, if the transfer or delivery of the deed was not such a delivery as would transfer title, then Howard Clancey and his brother, the defendant in this case, never did receive any present interest in the property, and if, at the time Howard signed this deed back to his father he had no present

interest then neither he nor the plaintiff in this action was defrauded of anything no matter what the factual relation to the execution of the instrument was."

■ The court was not justified in assuming that the defendant's evidence, as a hostile and interested witness, conclusively established that the deed was delivered to him merely for the purpose of recording, that it was afterwards returned to the father, that the father retained absolute control over it, and that it was not intended to be effective if the father made any other disposition of the farm prior to his death. The court was justified, however, in assuming that there was an understanding that the father was to retain, and did retain, the income from the farm and the management of it after he executed the deed. The plaintiff had testified: "Mr. Clancey, Sr., according to my understanding, was to have the income from the farm. I assumed he would probably control it." But retention of possession and control of the farm and its income by Charles F. Clancey, Sr., did not conclusively establish non-delivery of the deed of February 19, 1942. See Wolf v. Wolf, 59 S.D. 418, 240 N.W. 349, 350; Strain v. Ferris, 65 S.D. 226, 272 N.W. 677, 680; Kelly v. Gram, S.D., 38 N.W.2d 460, 462-463.

■ The deed of February 19, 1942, which had been duly executed, acknowledged and recorded, coupled with the evidence that it had been in the possession of the defendant, and that Howard B. Clancey had subsequently been requested to reconvey to his father his interest in the farm, made the question of the delivery of the deed one of fact for the jury. In Gould v. Day, 94 U.S. 405, 412, 24 L.Ed. 232, the Supreme Court said: "It is true that Jackson was ignorant of the fact that Anthony had made a deed of the lands to him in 1865, until he was called upon to reconvey them; but, when informed of the fact, he immediately acted upon the assumed validity and operation of the instrument, and executed the desired conveyance. Now, while it is law that a delivery of a deed is essential to pass an estate, and there can be no delivery without a surrender of the instrument or the right to retain it, such

delivery will be presumed, in the absence of direct evidence, from the concurrent acts of the parties recognizing a transfer of the title. The question here is not whether the delivery took place at the date of the deed, but whether it took place at all. The acts of the grantor and grantee—the one in asking a reconveyance and the other in making it—were satisfactory evidence that at that time the delivery had been made, and they justified the finding of the jury that the deed had been accepted by Jackson. Jackson v. Cleveland, 15 Mich. 94, 90 Am. Dec. 266."

We think that at the close of the plaintiff's evidence the jury could have found that Charles F. Clancey, Sr., when he executed the deed of February 19, 1942, naming his sons as grantees, and delivered it to the defendant, intended the deed to have the effect which it purported to have and which the plaintiff claims it had. It is our opinion that the District Court erred in directing a verdict upon the ground that Howard B. Clancey had acquired no interest in the farm under the deed. We are not prepared to say that the court's action in directing a verdict is sustainable upon any of the other grounds urged by the defendant in support of it, and that the District Court merely gave a wrong reason for a correct conclusion.

■ Since there must be a new trial, it is necessary to consider some of the court's rulings upon evidence. The plaintiff contends that the defendant should not have been permitted to testify as to alleged oral statements of his father and his brother, Howard B. Clancey, both of whom were dead. This, because of Section 36.0104 of the South Dakota Code of 1939, which provides: "*Deceased persons: testimony in actions by or against personal representatives.* In actions, suits, or proceedings by or against the representatives of deceased persons including proceedings for the probate of wills, any statement of the deceased whether oral or written shall not be excluded as hearsay, provided that the trial judge shall first find as a fact that the statement was made by decedent, and that it was in good faith and on decedent's personal knowledge."

Apparently the statute would not apply to statements made by Charles F. Clancey, Sr., since no representative of his estate was a party to the proceeding. The statute would apply to statements made by Howard B. Clancey, since the action is brought by the special administratrix of his estate. We gather that in a case such as this, tried to a jury, the trial judge, before admitting evidence of the statements of the deceased, must mak. the preliminary finding required by the statute, after hearing evidence as to the alleged statements and the making thereof. See Scott v. Liechti, 70 S.D. 89, 15 N.W.2d 1, 3. In the trial of the instant action, the defendant's testimony as to oral statements allegedly made by Howard B. Clancey were admitted without objection, and therefore the District Court did not err in that regard.

The other rulings on evidence, of which the plaintiff complains, can best be understood by a statement of the evidence adduced and offered by her at the trial. The plaintiff sought to show that her mother, who lived in Sioux Falls, was notified on May 26, 1942, that the plaintiff's husband was in the hospital; that her mother at once notified the defendant's wife; that on that same day or the next day the plaintiff's mother had a telephone conversation with the defendant, in which he told her that his father had made a "joint deed" of the farm to Howard and the defendant, that he (the defendant) had talked to a lawyer about it, that the lawyer had stated that in a "joint deed," if Howard died, Mildred (the plaintiff) would not share in the farm, that the farm would go to the defendant, that it was his idea to have a deed signed by Howard and himself and have the property returned to their father, and that then he would make a new deed to Howard and the defendant, and their respective wives would be co-owners; that the plaintiff's mother told the defendant that the doctor said that Howard might pass on at any moment, and that he (the defendant) had better hurry to take care of the deed; that, after this telephone conversation, the defendant called upon the plaintiff's mother personally and repeated, in substance, what he had told

her over the telephone; that the statements of the defendant were communicated by the plaintiff's mother to the plaintiff over the telephone; that the plaintiff, in turn, communicated the statements to her husband; that the defendant came to Chicago on or about May 29, 1942, and in a conversation with his brother in the hospital, in the plaintiff's presence, "said that they wanted a new deed drawn because they wanted to protect—the deed as it stood did not protect Charles' wife, Vi, or Howard's wife, who was I, as it stood, and they wanted a new deed drawn, therefore we would have to transfer the property, or my husband would have to transfer the property back to his father so a new deed could be drawn which would protect Vi in case her husband should die, or protect me in case my husband should die." The plaintiff also sought to prove that, after the defendant had made those statements, she and her husband, in reliance upon them, agreed to the reconveyance of the farm to the father, and executed and acknowledged the deed of June 15, 1942, which the defendant sent them. The plaintiff also attempted to show that, prior to the execution of the deed, the defendant, in a conversation with her alone, said, in substance, that if Howard died the defendant would be the sole owner of the farm, and that it would be better to redeed the land to Charles F. Clancey, Sr., so that, under a deed which he would execute, she, upon the death of her husband, would have his half interest in the farm. The testimony of the plaintiff's mother as to her conversation with the defendant on or about May 26, 1942, was admitted by the court, but only after the defendant, on cross-examination as an adverse witness, had denied having had any such conversation with her about the deed of February 19, 1942, and Howard's interest in the farm, and only for the purpose of impeachment. The court would not permit the plaintiff to show that her mother communicated to her the statements that the mother testified the defendant had made to her, nor that the plaintiff communicated the same information to her husband, nor that the defendant told the plaintiff that if her husband died, he (the defendant) would be the sole owner of the

farm, nor that she and her husband relied upon the defendant's statements.

It seems to us that the court's rulings on evidence were unreasonably restrictive. The court was apparently of the opinion that the only evidence admissible on the issue of fraud was the statements which the defendant made directly to his brother. This, we think, largely ignored the circumstances of the situation. Howard B. Clancey was a dying man, dependent, as a man in such a situation usually is, for help, information and advice, upon his wife. What object the defendant could have had in talking to the plaintiff's mother about a reconveyance of the interest of Howard B. Clancey in the farm, except to have her communicate his statements to the plaintiff and have them communicated to her husband, is not readily apparent.

■ Where false representations are made to one person with the expectation and purpose of having them communicated to another, and they are so communicated and acted upon by him to his prejudice, the result of the fraud must be deemed to have been contemplated by the guilty party, and he is liable therefor. Chubbuck v. Cleveland, 37 Minn. 466, 467, 35 N.W. 362, 364, 5 Am.St.Rep. 864; Iasigi v. Brown, 17 How. 182, 196, 15 L.Ed. 208.

■ While it is true that, under South Dakota law, the plaintiff herself had no interest in the farm and that it was unnecessary to have her join in its reconveyance to Charles F. Clancey, Sr., nevertheless she was entitled to give her reasons for executing and acknowledging the deed of June 15, 1942, which the defendant had had prepared for her to sign, and which, upon its face, indicated that it had been signed freely and voluntarily both by her and her husband.

The Supreme Court of South Dakota has said: "On the issue of fraud, great latitude is permitted in the introduction of evidence. The whole transaction from start to finish may be scrutinized. Statements and acts of the parties before and after the completion of the transaction are competent as throwing light upon their intentions."

First Nat. Bank of West Minneapolis v. Harvey, 29 S.D. 284, 305, 137 N.W. 365, 369. That court has also said: " * * * A fraudulent intent may be gathered from circumstances which are sufficient to overcome the presumption of honesty and fair dealing which support business transactions. Guaranty State Bank of Osceola v. Potter et al., 49 S.D. 619, 208 N.W. 170." Federal Land Bank of Omaha v. Houck, 68 S.D. 449, 459, 4 N.W.2d 213, 218.

■ It is our conclusion that the plaintiff was entitled to show what statements relative to Howard B. Clancey's interest in the farm the defendant made to the plaintiff's mother after learning of the serious condition of his brother Howard, whether the plaintiff's mother conveyed those statements to the plaintiff, and whether the plaintiff conveyed them to her husband. We are also of the opinion that the plaintiff should have been permitted to testify as to statements made to her personally by the defendant about her husband's interest in the farm, and to state whether she relied upon them when she joined in its reconveyance to Charles F. Clancey, Sr. The plaintiff and her mother were in court and were subject to cross-examination. Their credibility and the weight of any evidence given by them were for the jury to determine.

■ The contention of the plaintiff that the District Court erred in requiring her to give security for costs under Section 33.-1820 of the South Dakota Code of 1939 is overruled upon the authority of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221.

We realize that this opinion does not dispose of all the questions which are sought to be raised by the parties or which may arise upon a retrial, but we think it disposes of the questions that were ruled upon by the trial court and which are properly reviewable by this Court on this appeal.

The judgment appealed from is reversed, and the case is remanded for a new trial.